825 A.2d 985

**GOLDSTEIN & BARON CHARTERED, et al.**

v.

**William CHESLEY.**

No. 94, Sept. Term, 2002.

Court of Appeals of Maryland.

June 11, 2003.

Glenn Curtis Etelson (Leonard R. Goldstein, on brief), Rockville, for petitioners.

Cynthia E. Young, Annapolis (David G. Whitworth, Jr., Whitworth, Smith & Trunnell, P.A., on brief), Crofton, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

WILNER, J.

The dispute that spawned this litigation arose from the sale of a parcel of land by the Estate of Dr. Erwin Rose to William Chesley. That sale produced a claim by a broker, Coldwell Banker, for a commission on the sale, an agreement by Chesley to indemnify the Estate against any liability for such a commission, and a further agreement by Chesley to allow the attorneys for the Estate, Goldstein & Baron, Chartered (G & B), to defend the claim by Coldwell Banker and to pay the fees of G & B incurred in that defense. The claim for a commission was litigated and eventually settled. What linger with us are some procedural issues arising from separate litigation between Chesley and G & B over the indemnity agreement.

## BACKGROUND

Prior to his death in July, 1987, Dr. Rose had listed the property with Coldwell Banker, agreeing to pay a 10% commission on any sale, but that agreement lapsed in March, 1987. During the period of the listing, Coldwell Banker

distributed literature about the property to a number of people, one of whom was Chesley. Upon Dr. Rose's death, his sister, Rosalind Marsh, was appointed as personal representative of the Estate. Although she did not renew the listing with Coldwell Banker, that firm continued to market the property to prospective buyers in the belief that the listing remained effective. Two offers were sent to Ms. Marsh, but she did not respond to them.

At some point, Ms. Marsh retained G & B as attorneys for the Estate. In the course of that representation, Leonard Goldstein, a principal of G & B, began negotiating with Chesley and, on April 11, 1988, they concluded a written agreement for the sale of the property for $1,000,000. Although he did not believe that any commission was due to Coldwell Banker, Goldstein was aware that it might make a claim for one. To protect the Estate against such a claim, he inserted into the contract of sale the following provision:

"Seller and Purchaser hereby acknowledge and agree that no real estate commission shall be paid by Seller, and that any brokerage fee or commission resulting from this transaction shall be the sole responsibility of the Purchaser. If any claim or action is brought by any agent or broker for a commission with respect to this transaction, the Purchaser shall pay and hold harmless, defend and indemnify the Seller against all claims, costs, expenses, liability, damage or actions, including Seller's attorneys' fees, in connection with such claim or action."

Goldstein promptly informed Coldwell Banker that the property had been sold. The sale was ratified by the Orphans' Court, and closing occurred on July 8, 1988. On September 1, Coldwell Banker filed suit in the Circuit Court for Prince George's County for a commission on the sale. The complaint was partially based on an allegation that, before he died, Dr. Rose had extended the listing agreement to May 30, 1988, and that the listing was therefore in existence when the property was sold. Goldstein notified Chesley of the lawsuit, reminded him of his obligation under the indemnity clause, and offered him the choice of obtaining his own attorney or

allowing G & B to conduct the defense. Chesley agreed to allow G & B to defend the action.

The case proceeded to trial in October, 1991. At the end of the plaintiff's case, the court entered judgment in favor of the Estate. Evidence had been presented that the extension agreement relied upon by Coldwell Banker was, in fact, a forgery. Aggrieved, Coldwell Banker appealed. In October, 1992, the Court of Special Appeals, in an unreported Opinion, reversed, concluding that there were certain triable issues for the jury to determine. Before the commencement of a second trial, Chesley entered into negotiations with Coldwell Banker and settled the case.

In June, 1989, while the case against Coldwell Banker was first pending in the Circuit Court, Ms. Marsh and G & B petitioned the Orphans' Court for allowance of a fee in the amount of $175,252 for the legal services G & B had rendered. They noted that the maximum fee permitted under Maryland Code, Estates and Trust Article, § 7–601 was $125,353, based on a 10% commission on the real estate sold ($100,000 for the property sold to Chesley and $8,750 for the sale of other real estate), 10% of the first $20,000 of personalty, and 4% of the remaining personalty ($14,603), but they sought an additional $49,899 for extra and special services that G & B had rendered. In July, 1989, the court allowed the entire requested fee.

G & B began billing Chesley for its services in connection with the Coldwell Banker litigation in December, 1989. By April, 1994, G & B had billed a total of $65,811, of which Chesley paid $23,381. In August, 1995, after it became clear that Chesley did not intend to pay anything more, G & B filed suit in the Circuit Court for Prince George's County, seeking a total of $52,675, including pre-judgment interest. G & B did not ask for a jury trial.

On November 2, Chesley filed an answer to the complaint, in which he raised a number of defenses, including an allegation that he was induced to enter into the indemnity agreement by fraudulent or negligent misrepresentations on Gold-

stein's part. Chesley claimed that Goldstein had not only misrepresented Coldwell Banker's participation in the sale but had also stated that no real estate commission would be paid by the Estate on the sale of the property, a statement that, in light of G & B's acceptance of what Chesley regarded as a 10% commission on the sale, was false. Chesley did not pray a jury trial in his answer. A month later, however, on December 5, 1995, Chesley filed a counterclaim against G & B and a third party claim against Goldstein, based on the same allegation that Goldstein had fraudulently or negligently misrepresented that no commission would be paid by the Estate. Because Goldstein and G & B stand essentially in the same position, we shall, for convenience, refer to that pleading as a counterclaim against G & B. Chesley charged G & B with fraud, negligent misrepresentation, and legal malpractice and sought compensatory damages of $150,000, principally to cover the costs incurred in defending claims by the Estate and G & B. Attached to the counterclaim was a demand for jury trial—"Defendant, Counter Plaintiff and Third Party Plaintiff, William Chesley, [by counsel], hereby demands a trial by jury."

In September, 1996, the court determined that Chesley's counterclaim was barred by limitations and granted summary judgment to G & B on that claim. The basis for the court's ruling was that Chesley became aware of the facts underlying the claim, which was filed in December, 1995, when the Court of Special Appeals filed its opinion in the Coldwell Banker appeal in October, 1992. Although it does not appear that the court ever formally struck Chesley's demand for a jury trial, when the G & B claim was called for trial and Chesley asserted a right to a jury, the court determined that the jury trial demand, having been made more than 15 days after the answer was filed, was untimely. The court relied on Maryland Rule 2–325(b), which is part of the Rule on electing a jury trial in civil cases, and provides that "[t]he failure of a party to file the demand [for jury trial] within 15 days after service of the last pleading filed by any party directed to the issue constitutes a waiver of trial by jury."

The court then tried the G & B action non-jury and, at the close of evidence, found that there was no fraud in the inducement of the indemnity agreement and that the amounts billed by G & B were fair and reasonable. After giving Chesley credit for the amounts he had paid, the court entered judgment for G & B in the amount of $41,731 plus $15,023 in pre-judgment interest. Chesley appealed, complaining both about the judgment for the attorneys' fees and the summary judgment entered on his counterclaim. With respect to the fees, Chesley argued that G & B had acted as attorneys for both him and the Estate, that the firm was in a conflict situation, and that Goldstein had failed in his duty of loyalty to him to disclose certain important information, such as his receipt of a commission on the sale of the property. As to the counterclaim, he averred that, although he had received a copy of the Court of Special Appeals Opinion in the Coldwell Banker case, he did not immediately understand the significance of it and did not become aware of the relevant facts until March, 1993, in the course of negotiating the settlement with Coldwell Banker.

The Court of Special Appeals found no merit in Chesley's complaint about the fees and affirmed that part of the judgment. In an unreported Opinion, it concluded that, although G & B did represent Chesley in the Coldwell Banker litigation, there was no conflict of interest between Chesley and the Estate with respect to that litigation, that G & B had made adequate disclosure to Chesley, and that it had not defrauded him. In that regard, the court determined that Goldstein had *not* received a commission on the sale of the property but rather a fee for legal services rendered to the Estate, part of which was merely stated as a commission, and that, even if the fee could be regarded as including a commission, there was still no error, as the Estate had never claimed reimbursement from Chesley for that expense. The appellate court reversed the summary judgment entered on the counterclaim, however, concluding that, on the facts presented, the question of whether a reasonable person in Chesley's position would have

realized that he had a cause of action based on the Opinion filed in the Coldwell Banker case was for a jury to determine.

Having resolved the merits of the appeal, the Court of Special Appeals, in response to a motion for reconsideration filed by Chesley, addressed one additional matter—the jury trial issue. There were two prongs to that issue. Chesley had asserted in his brief that, in the event of a reversal of the summary judgment entered on the counterclaim, he would be entitled to a jury trial on that claim, and, in its revised Opinion, filed in response to the motion for reconsideration, the appellate court agreed with him. Citing *Hawes v. Liberty Homes*, 100 Md.App. 222, 640 A.2d 743 (1994), *cert. denied*, 336 Md. 300, 648 A.2d 203 (1994), the court noted that, under Maryland Rule 2–325(e), when a trial by jury has been elected by any party, "the action, including all claims whether asserted by way of counterclaim, cross-claim or third-party claim, as to all parties, and as to all issues triable of right by a jury, shall be designated upon the docket as a jury trial." On that premise, the court concluded that, with the reversal of the summary judgment on the counterclaim, Chesley was entitled, on remand, to a jury trial on all issues triable by a jury.

The court also noted that, in his motion for reconsideration, Chesley had sought reversal of the judgment entered for the attorneys' fees because of the denial of his request for a jury trial. Inconsistently with its ruling on the first prong of the argument, the court declined to address that point because it was not raised in Chesley's brief and was presented for the first time in his motion for reconsideration. The court expressed no opinion as to any preclusive effect the judgment entered for attorneys' fees, affirmed by the appellate court, might have on the counterclaim.

The court's disinclination to address either of those issues effectively generated the current dispute now before us. On remand, G & B again moved for summary judgment on the counterclaim, this time on the twin grounds of *res judicata*— that the counterclaim was based on the same allegations that were adjudicated in the G & B claim for attorneys' fees—and

"law of the case." The court granted that motion and entered judgment for G & B. It concluded that the issues presented in the counterclaim were the same as those raised in defense of the G & B action—whether G & B had a conflict of interest with respect to the Coldwell Banker litigation and whether adequate disclosure had been made to Chesley before he agreed to the indemnity provision—that they were expressly decided in that action, and that the bar of both issue preclusion (collateral estoppel) and claim preclusion (*res judicata*) thus applied.

Chesley again appealed. The Court of Special Appeals held that, because the counterclaim was filed in the same action as G & B's claim, neither issue preclusion nor claim preclusion applied. *Chesley v. Goldstein,* 145 Md.App. 605, 806 A.2d 296 (2002). The court noted that claim preclusion *(res judicata)* applies "when the parties to a subsequent suit are the same or in privity with the parties to a prior suit; the first and second suits present the same claim or cause of action; and there was a final judgment rendered on the merits in the first suit, by a court of competent jurisdiction" (*id.* at 622, 806 A.2d at 306) and that, under issue preclusion (collateral estoppel), "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties." *Id.* at 623, 806 A.2d at 306 (quoting prior Court of Appeals cases). Both doctrines, the court observed, require sequential litigation and do not apply to a decision on one claim in a single multi-claim action.

Recognizing that a reversal and remand on the counterclaim alone raised the prospect of a verdict on the counterclaim that might be inconsistent with the decision reached on the G & B claim, the court examined further the relationship between the two actions in light of its previous affirmance of the decision entered on the G & B claim. Citing one of its earlier decisions, the court concluded that a remand for a *partial* new trial was not appropriate unless the issue to be retried "is so distinct and separable from the others that a trial of it alone may be had without injustice." *Chesley, supra,* 145 Md.App.

at 628, 806 A.2d at 310 (quoting *Stickley v. Chisholm,* 136 Md.App. 305, 315, 765 A.2d 662, 668 (2001), quoting, in turn, *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188, 1191 (1931)).

It was apparent to the court that the relevant operative facts underlying the G & B claim were so interwoven with those on which the counterclaim was based that they could not be determined independently. Accordingly, the court concluded that "Chesley's right to have a jury determine the issues triable of right by jury in this case cannot be enforced in the absence of a retrial on all of the claims." *Chesley, supra,* 145 Md.App. at 629, 806 A.2d at 310. That conclusion, of course, raised the question of how to treat the court's earlier affirmance of the judgment entered on the G & B claim for attorneys' fees: did the "law of the case" doctrine preclude the court from vacating a judgment that, in a previous appeal, it had affirmed?

In responding negatively, the court relied on *Hawes v. Liberty Homes, supra,* 100 Md.App. 222, 640 A.2d 743, which explained that the "law of the case" doctrine is one of appellate procedure and convenience rather than an inflexible rule of law, such as claim or issue preclusion, and that, although an appellate decision certainly binds lower courts, the appellate court that rendered the decision is not precluded from reconsidering an issue it previously decided, even in the same case, when exceptional circumstances so warrant. The thrust of *Hawes* was that decisions rendered by a prior appellate panel of the Court of Special Appeals will generally govern in a second appeal "unless (1) the previous decision is patently inconsistent with controlling principles announced by a higher court and is therefore clearly incorrect, *and* (2) following the previous decision would create manifest injustice." *Hawes, supra,* 100 Md.App. at 231, 640 A.2d at 747.

The court found both of those criteria to be met. It held that, under Maryland Rule 2–325(e), Chesley, having demanded a jury trial in his counterclaim, was entitled to a jury trial on all claims in the action, and that the earlier remand for

retrial only on the counterclaim was therefore clear error: "the only proper disposition [in the earlier appeal] given our holding was to vacate the judgments on all the claims and remand the case for a new trial, on all the claims." *Chesley, supra,* 145 Md.App. at 634, 806 A.2d at 313. Not to do so, the court added, would continue to create a manifest injustice:

> "For Chesley to have a fair trial, the original, counterclaim, and third party claims must be tried together; and to effectuate Chesley's jury trial right, the trial on all the issues in those claims, being factual issues, must be to a jury. The only way to accomplish that is to vacate the judgment in the original claim, which we shall do."

*Id.*

Obviously distraught at losing not only its victory on the counterclaim but also the judgment for attorneys' fees, G & B sought *certiorari,* raising essentially three issues: whether, apart from any question of claim or issue preclusion, summary judgment on the counterclaim was appropriate because there were no material facts in dispute and G & B was entitled to judgment as a matter of law; whether the second panel of the Court of Special Appeals misapplied the "law of the case" doctrine; and whether that panel erred as well in failing to find that the counterclaim was barred by claim preclusion (*res judicata*). We granted the petition and shall affirm the judgment of the Court of Special Appeals, although not entirely for the reasons cited by that court.

## DISCUSSION

■ The answer to all three complaints made by G & B lies in the fact that, when Chesley filed a demand for jury trial with his counterclaim, he was entitled to a jury trial on all issues in the action, including those raised in G & B's complaint. That right, which was denied to him, can be enforced only by a remand of the entire case. It is regrettable that the case has to go back to Square One at this point, but it was at G & B's urgings that the problem was created.

The right to a jury trial in civil actions at law is provided for in Articles 5 and 23 of the Maryland Declaration of Rights and is therefore of Constitutional dimension. Article 23—the more specific provision—states that the right of trial by jury "of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of $10,000, shall be inviolably preserved." Maryland Rule 2–325(a) implements that right. It provides that "[a]ny party may elect a trial by jury of any issue triable of right by a jury by filing a demand therefor in writing either as a separate paper or separately titled at the conclusion of a pleading. . . ."

Chesley filed a demand for a jury trial with his counterclaim which, as we noted, was labeled as a counterclaim against G & B and a third party claim against Goldstein individually. A counterclaim is a pleading, as is a third party complaint. *See* Maryland Rule 1–202(s). Maryland Rule 2–331(a) permits a party to assert as a counterclaim "any claim that party has against any opposing party, whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Section (c) of that Rule also allows the counterclaimant to make a person not previously a party to the action a party to the counterclaim.[1]

The Court of Special Appeals was correct in its ultimate conclusion that, having filed a demand for jury trial with his counterclaim, Chesley was entitled to a jury trial on all issues in the action. The demand was timely, in that it was made contemporaneously with "the last pleading filed by any party

---

1. Chesley characterized his action against Goldstein as a third party complaint. More appropriately, he was simply adding Goldstein as a party to his counterclaim, as permitted by Rule 2–331(c). Third party complaints are dealt with in Rule 2–332 and are for the purpose of suing a person who is not already a party to the action and "who is or may be liable to the defendant for all or part of a plaintiff's claim against the defendant." It does not appear that Chesley was asserting that Goldstein was liable for any part of the claim asserted against Chesley by G & B but rather was liable, along with G & B, for wrongs committed independently by them. That nuance is not important at this point.

directed to the issue." Maryland Rule 2–331(d) permits a party to file a counterclaim within 30 days after the time for the filing of that party's answer, and there is no indication in this case that Chesley's counterclaim was not filed within that period.[2]

■ It is clear that a demand for jury trial filed with a counterclaim subjects all issues in the action, otherwise triable by a jury, to that mode of trial. The very text of Rule 2–325(e) so provides: "When trial by jury has been elected by any party, the action, including all claims whether asserted by way of counterclaim, cross-claim or third-party claim, as to all parties, and as to all issues triable of right by a jury, shall be designated upon the docket as a jury trial." It is also apparent from our holding in *Higgins v. Barnes*, 310 Md. 532, 530 A.2d 724 (1987) and is implicit from the holding of the Court of Special Appeals in *Hawes v. Liberty Homes*, *supra*, 100 Md.App. 222, 640 A.2d 743.

Like the case before us, *Higgins* involved a contract dispute. Barnes sued for specific performance of the contract or, in the alternative, for damages. It was an equitable action, triable by the court without a jury. Higgins answered the complaint and filed a counterclaim for damages for breach of

---

2. Although the record before us is not entirely clear whether the counterclaim was, in fact, timely filed, there is no indication that it was not. Maryland Rule 2–331(d) provides that, if a counterclaim is filed more than 30 days after the time for filing that party's answer, any other party may object to the late filing by a motion to strike the counterclaim. If such a motion is filed and the court finds that the counterclaim was, in fact, untimely, the Rule requires the court to grant the motion unless there is a showing that the delay has not prejudiced any other party. Under Maryland Rule 2–321, an answer to an original complaint served in Maryland must be filed within 30 days after service of the complaint. G & B's complaint was filed August 4, 1995. Chesley's answer was filed November 2, 1995, but, because the record before us does not show when the complaint was served on Chesley, we cannot tell whether the answer was filed before the expiration of the 30 day period, and thus we cannot tell whether the counterclaim, filed December 5, 1995, was within 30 days after the answer was due. This is all irrelevant, however, as neither G & B nor Goldstein ever filed a motion to strike the counterclaim, and so it must be taken as though it was filed timely.

contract. That was a law action subject to jury trial, and along with the answer and counterclaim, Higgins filed a demand for a jury trial. The Circuit Court struck the demand, however, and tried the case non-jury, on the ground that it was an equitable action. We reversed and concluded that, because the claim and counterclaim involved common issues and because Higgins was entitled to a jury trial on his breach of contract claim, the demand for jury trial "should have been granted as to the issues raised by her answer and counterclaim." *Higgins v. Barnes, supra,* 310 Md. at 552, 530 A.2d at 734.

*Hawes* is to the same effect. That case also involved a contract dispute, centered on whether a financing contingency in a contract for the construction of a home was either satisfied or waived. The builder, Liberty, concluded that the contingency had not been satisfied and declared the contract void, whereupon the buyers (collectively Hawes) sued for specific performance, declaratory and injunctive relief, and damages. In their initial and first amended complaints, Hawes alleged breach of contract and civil conspiracy; neither they nor Liberty sought a jury trial. In a second amended complaint, Hawes added two additional counts—for deceptive trade practices and negligent misrepresentation—and in its answer to that complaint, Liberty demanded a jury trial on all issues.

The court tried the specific performance and declaratory judgment counts non-jury but allowed the other counts to be tried to a jury. The jury found for Hawes and awarded damages. In reaching that verdict, the jury necessarily determined that the financing contingency had either been satisfied or waived, as that was really the only issue in dispute, other than damages. In ruling on post-trial motions, the court held that there was sufficient evidence to support the jury's verdict but that the damages were excessive, and, in default of agreement to a remittitur, ordered a new trial. It later denied the request for specific performance on the ground that Hawes had failed to satisfy the financing contingency and that such failure terminated the contract sought to be specifically

enforced. That determination was flatly inconsistent with the verdict of the jury.

The Court of Special Appeals affirmed those rulings, concluding that (1) the issue of the new trial was not properly. before it, (2) it had no merit in any event, and (3) in ruling on the request for specific performance, the judge was not bound by the jury's determination that the contract had been breached by Liberty and was free to make a ruling inconsistent with that determination. *Hawes v. Liberty Homes, Inc.*, 93 Md. App. 829 (1992) (unreported opinion). When the case returned to the Circuit Court, supposedly for the new trial, Liberty filed a motion for summary judgment grounded on the premise that Hawes was bound by the court's determination, affirmed on appeal, that there had been no breach. The court granted that motion, which produced a second appeal. *Hawes v. Liberty Homes, supra,* 100 Md.App. 222, 640 A.2d 743.

In that second appeal, the court determined that, in light of *Higgins v. Barnes, supra,* 310 Md. 532, 530 A.2d 724, the earlier appellate determination that the Circuit Court judge was free to rule inconsistently with the jury's determination that there had been a breach of the contract was clear error and that, to give it binding effect under the "law of the case" doctrine would be manifestly unjust. The prior affirmance of the judge's determination that the contract had not been breached could not, therefore, serve to preclude the new trial that both the Circuit Court and the appellate court had expected would occur.

More significantly to our purpose here, the Court of Special Appeals, in that second appeal, also addressed, and rejected, the argument by Liberty that, by not demanding a jury trial within 15 days after the filing of the initial or first amended complaints, Hawes had waived their right to such a trial. Liberty's own demand for jury trial, it averred, went only to the deceptive trade practice count added in the second amended complaint, and that, as that count was no longer in the case, Hawes had no right to a jury trial at all. Relying, as we

do, on Maryland Rule 2–325(e), the court concluded that, when the demand for jury trial was made in response to the second amended complaint, "all issues triable of right before a jury were subjected to that mode of trial...." *Hawes, supra,* 100 Md.App. at 235, 640 A.2d at 749. Moreover, by virtue of Rule 2–325(f), even though the demand had been made by Liberty, it could not be withdrawn without the consent of Hawes and Hawes had a right to its benefit.[3]

With that principle in place, the response to G & B's arguments becomes rather simple. G & B's first argument has two disparate parts. It looks at its complaint for breach of contract and the counterclaim, sounding entirely in tort, as raising completely separate issues and thus contends that the counterclaim was not directed to the issue raised in its complaint. Accordingly, the demand for jury trial attached to the counterclaim was not filed within 15 days after the last pleading directed to the issue raised in the G & B complaint and, for that reason, was untimely. In making that argument, G & B conveniently ignores the defense asserted to its claim, which raised the same issues that were raised in the counterclaim. As the counterclaim was a pleading, and as it was directed to the same issue that was raised with respect to the initial complaint, the demand for jury trial filed contemporaneously with that counterclaim was, indeed, timely. It was the last pleading directed to the issue.

As the second part of its first argument, G & B urges that, apart from any notion of claim or issue preclusion, summary

---

**3.** In that regard, the court quoted with approval from the treatise on the Maryland Rules, PAUL NIEMEYER AND LINDA SCHUETT, MARYLAND RULES COMMENTARY, 160–61:

"Once a jury trial is properly elected by any party, it becomes the right of any party thereafter to have the case tried before a jury. All parties may rely on the properly filed demand of any other party, and need not file an additional demand on their own behalf.

A demand properly made by any party on any claim in the action has the effect of submitting to the jury all issues triable of right by a jury. Section (e) of this rule does not permit submitting some 'legal' claims to the jury and reserving others for trial by the court. The rule evidences an intent to preserve and favor the jury trial even if, to preserve it, a technical expansion might occur."

judgment was properly granted because there were no material facts in dispute and it was entitled to judgment as a matter of law on the merits. The reason no material facts were in dispute is because the judge had already decided those facts in his non-jury trial of the G & B action. Therein, of course, lies the fallacy in the argument. The judge had no right to decide those facts; they were, indeed, in dispute, and that dispute was for a jury to resolve.

■ The Circuit Court granted the summary judgment, on remand, because it concluded that Chesley's counterclaim was barred by claim and issue preclusion. That, in turn, was based on the fact that the court had already adjudicated the facts underlying the counterclaim. The Court of Special Appeals went to some effort in addressing that question, ultimately concluding that, because G & B's complaint and Chesley's counterclaim were all part of the same single action, neither doctrine applied. There is a much simpler, and less problematic, answer—the same one that resolves all of the issues. The basis for the argument of both claim and issue preclusion is the judgment entered by the court on G & B's claim for attorneys' fees. But as both the Court of Special Appeals and we have recognized, that claim should not have been resolved by the court. As we have concluded that rigid adherence to the "law of the case" doctrine was inappropriate and that affirmance of the judgment for G & B could not stand, the entire basis for both claim and issue preclusion evaporates.

■ This brings us to the final argument posited by G & B—that the Court of Special Appeals erred in not applying the "law of the case" doctrine with respect to its prior affirmance of the judgment entered in the G & B action. We find no error. The court applied the principles it had announced in *Hawes,* which accurately describe the nature and limitations of the "law of the case" doctrine. The decision of the first panel not to address Chesley's argument that he was entitled to a jury trial on the G & B action and to remand only the counterclaim for new trial was not only wrong but inconsistent

with its own conclusion that, once the demand for jury trial was made in Chesley's counterclaim, he was entitled to a jury trial on all issues in the case, as all were otherwise triable to a jury. For the second panel to ignore that error and permit it, under the "law of the case" doctrine, to preclude Chesley from having the jury trial to which he was entitled, would, indeed, have been manifestly unjust.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.