840 A.2d 715

Martin F. SCOTT

v.

STATE of Maryland.

No. 52, Sept. Term, 2003.

Court of Appeals of Maryland.

Jan. 13, 2004.

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), for petitioner.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., and RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, ELDRIDGE, JOHN C., (retired, specially assigned), JJ.

BATTAGLIA, J.

This case comes to us from a judgment of the Court of Special Appeals affirming the Circuit Court for Baltimore City's denial of Martin Scott's motion to correct an illegal sentence. We must consider whether the Court of Special Appeals erred when it used the doctrine of law of the case to give preclusive effect to a Circuit Court order denying Scott's motion to correct an illegal sentence. Moreover, we must decide whether Scott's sentence was illegal under Maryland Rule 4–345 because his commitment records were corrected without a hearing and in such a way as to allegedly increase his sentence.[1] We conclude that the Court of Special Appeals

---

1. In 1990, when Scott's commitment records were corrected, Maryland Rule 4–345 provided:

> Rule 4–345. Sentencing—Revisory power of court.
> (a) Illegal sentence. The court may correct an illegal sentence at any time.
> (b) Modification or Reduction—Time for. The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not been perfected, and (2) in a circuit court, whether or not an appeal has been filed, the court may modify or reduce or strike, but may not increase the length of, a sentence. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity, or as provided in section (d) of this Rule.
> (c) Open Court Hearing. The court may modify, reduce, correct, or vacate a sentence only on the record after notice to the parties and an opportunity to be heard.
> (d) Desertion and Non-support Cases. At any time before expiration of the sentence in a case involving desertion and non-support of spouse, children or destitute parents, the court may modify, reduce,

erred when it applied the doctrine of the law of the case to a motion to correct an illegal sentence. We affirm, however, the

---

or vacate the sentence or place the defendant on probation under the terms and conditions the court imposes.

Maryland Rule 4–345 was amended on November 1, 2001. We note that Scott, in his questions presented, refers to Maryland Rule 4–345(d) with respect to his contention that a hearing was required in 1990 when Judge Byrnes corrected his commitment records. In 1990, however, it was Maryland Rule 4–345(c) that provided the open hearing requirement. When the rule was amended in 2001, it moved, among other things, the open hearing requirement in part (c) to part (d), so that it read:

(a) Illegal sentence. The court may correct an illegal sentence at any time.

(b) Modification or reduction—Time for. The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not been perfected, and (2) in a circuit court, whether or not an appeal has been filed. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity, or as provided in section (e) of this Rule. The court may not increase a sentence after the sentence has been imposed, except that it may correct an evidence mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding.

(c) Notice to victims. The State's Attorney shall give notice to each victim and victim's representative who has filed a Crime Victim Notification Request form pursuant to Code, Criminal Procedure Article, § 11–104 or who as submitted a written request to the State's Attorney to be notified of subsequent proceedings as provided under Code, Criminal Procedure Article, § 11–503 that states: (1) that a motion to modify or reduce a sentence has been filed; (2) that the motion has been denied without a hearing or the date, time, and location of the hearing; and (3) if a hearing is to be held, that each victim or victim's representative may attend and testify.

(d) Open court hearing. The court may modify, reduce, correct, or vacate a sentence only on the record in open court, after hearing from the defendant, the State, and from each victim or victim's representative who requests an opportunity to be heard. No hearing shall be held on a motion to modify or reduce the sentence until the court determines that the notice requirements in section (c) of this Rule have been satisfied. If the court grants the motion, the court ordinarily shall prepare and file or dictate into the record a statement setting forth the reasons on which the ruling is based.

(e) Desertion and non-support cases. At any time before expiration of the sentence in a case involving desertion and non-support of spouse, children or destitute parents, the court may modify, reduce, or vacate the sentence or place the defendant on probation under the terms and conditions the court imposes.

Court of Special Appeals' judgment on the ground that Scott's sentence was not illegal under Maryland Rule 4–345.

## I.  Background

### A.  Facts

On October 1, 1981, Scott was convicted by a jury in the Circuit Court for Baltimore City of the following offenses:

- *Case No. 18035413:*

  Count 1:  First-degree murder.

  Count 2:  The use of a handgun in the commission of a felony.

- *Case No. 18035416:*

  Count 1:  Robbery with a deadly weapon.

  Count 8:  The use of a handgun in the commission of a felony.

- *Case No. 18107511:*

  Count 1:  Assault with intent to murder.

  Count 2:  The use of a handgun in the commission of a felony.

The offenses arose out of the same incident that occurred on November 25, 1980;  the State, however, had charged Scott with the crimes in separate indictments.

On November 5, 1981, the jury determined death to be the appropriate sentence for the first-degree murder charge, and the trial judge, Judge Peter Ward, imposed the following sentences:

- *Case No. 18035413:*

  Count 1:  Death.

  Count 2:  15 years for the use of a handgun in the commission of a felony "consecutive to 1st count—Murder in the First Degree."

- *Case No. 18035416:*

  Count 1:  20 years "consecutive to the sentence in 18033413" for robbery with a deadly weapon.  Count 8:

15 years "consecutive to the 1st count" for the use of a handgun in the commission of a felony.

- *Case No. 18107511:*
Count 1: 30 years "consecutive to sentence in 18035416" for assault with intent to murder. Count 2: 15 years "consecutive to the 1st count" for the use of a handgun in the commission of a felony.

Scott's total sentence, thus, was death plus ninety-five years.

On July 28, 1983, while incarcerated pursuant to the murder conviction in Case No. 18035413, Scott pled guilty to first-degree murder in a case involving a different incident, Case No. 18035701, for which Judge Edgar Silver, on the same day, imposed a sentence of life imprisonment, specifically stating, "Balance of Natural Life. Sentence to run consecutive to sentence now serving."

On September 19, 1983, this Court vacated the death sentence for the first-degree murder charge in Case No. 18035413, remanding the case to the Circuit Court for Baltimore City for a new sentencing proceeding. *Scott v. State,* 297 Md. 235, 465 A.2d 1126 (1983). A new jury, with Judge John Byrnes presiding, again imposed the death sentence.

On August 5, 1987, this Court again vacated the death sentence in Case No. 18035413, remanding the case for another new sentencing proceeding. *Scott v. State,* 310 Md. 277, 529 A.2d 340 (1987). This time, on remand, the State and Scott agreed to a sentence of life imprisonment for the first-degree murder charge. As a result, on February 10, 1988, Judge Byrnes resentenced Scott to "balance of life," with this sentence to run consecutive to the sentence imposed by Judge Silver in Case No. 18035701.

On October 10, 1989, Scott filed a motion to correct an illegal sentence. Judge Byrnes noted that Scott's motion lacked "complete clarity," but it appeared that Scott intended to argue that both of his life sentences were illegal. In support of his motion, without specifying which sentence he was referring to, Scott first argued that "balance of Natural Life ... lends to ambiguity in the interpretation of the actual

sentence" because it could be construed as a life sentence without the possibility of parole. He then argued that his commitment records failed to comply with Rule 4–351(a)(5),[2] as the term "consecutive" was "deficient" in that it did not indicate a starting date.

Judge Byrnes held a hearing on the motion on May 2, 1990. At that hearing, Scott acknowledged that his complaint essentially concerned the absence of a clear starting date for both life sentences. Scott argued that, even though he had received the death sentence and had been incarcerated since November 27, 1980, his commitment records did not stipulate when his sentence began. On May 17, Judge Byrnes had modified commitment records prepared for all of Scott's cases. The modified commitment records included information such as the original sentencing judge, the fact that the sentences had been corrected, and the fact that the corrections had been witnessed by the Clerk of the Court. The note "Total Time Served On All Cases: 2 consecutive life sentences plus ninety-five years" was also included on the final commitment record for the 1983 murder conviction for which a life sentence had been imposed.

On June 6, 1990, Judge Byrnes issued a memorandum and order denying Scott's motion to correct the illegal sentence. In his order, Judge Byrnes dismissed Scott's first contention that the sentence imposed in 1983 by Judge Silver in Case No. 18035701 was ambiguous because the State might interpret "natural life" to mean no possibility of parole, reasoning that the "historical record fact is that the State did not invoke

---

2. In 1980 and 1983, when Scott's commitment records were completed, Maryland Rule 777(a)(5), which preceded Rule 4–351(a)(5), stated, in pertinent part:

(a) When a person is convicted of an offense and sentenced to imprisonment, the clerk shall deliver to the officer in whose custody defendant has been placed a commitment record containing: ...
(5) A statement whether the sentences are to run concurrently or consecutively, and if consecutively, when each term is to begin with

Section 412(b)(2)" [3] "imprisonment for life without the possibility of parole...." As such, Judge Byrnes concluded, there was no basis for Scott's contention that the correctional authorities would be confused and imprison him without possibility for parole. Judge Byrnes stated, however, that "to clarify the matter fully, an amended commitment will be issued to delete the phrase 'natural life.' "

With respect to Scott's second contention, Judge Byrnes concluded that Rule 4–351(a)(5) was not violated because it was clear that the sentences were to run consecutive to each other. Judge Byrnes noted, however, that, because of Judge Silver's subsequent life sentence in 1983 and because of the fact that Scott's death sentence was vacated twice and ultimately reduced to a life sentence in 1988, Scott's commitment records should be corrected to clarify his sentence. Judge Byrne explained:

> [S]ince this Court's sentence of February 10, 1988 [the life sentence that replaced the vacated death sentence] reads: "Balance of Life ... consecutive to ... No. 18035701 (Silver, J. 7/28/83), and that latter sentence was ordered by Judge Silver to run consecutive to the sentence then being served (J. Peter Ward's November 6, 1981 sentence in No. 18035413 of 15 years, and in No. 18035416 of 20 years and 15 years, and in No. 18107511 of 30 years and 15 years all consecutive to one another) the *result at that time (7/28/83) would have been 95 years consecutive to the death sentence first imposed on November 6, 1981*

---

reference to the termination of the preceding term or any other outstanding or unserved sentence.

\*       \*       \*

**3.** Maryland Code, Article 27, Section 412(b) (1957, 1976 Repl. Vol., 1979 Cum.Supp.) provided:

A person found guilty of murder in the first degree shall be sentenced either to death or to imprisonment for life. The sentence shall be imprisonment for life unless (1) the State notified the person in writing at least 30 days prior to trial that it intended to seek a sentence of death, and advised the person of each aggravating circumstance upon which it intended to rely, and (2) a sentence of death is imposed in accordance with § 413.

*and later reimposed on February 14, 1985.* When these two death sentences in No. 18035413, Count 1 were vacated and ultimately replaced, with defendant's concurrence on February 10, 1988, by a life sentence, and the result is that those 95 years are consecutive to that life sentence, and the life sentence imposed in No. 18035701 by Judge Silver on July 28, 1983 will run consecutive to it, i.e., the life sentence in No. 18035413. Consequently, the Commitment record in No. 18035413, Count 1 should be corrected to delete the phrase ... 'consecutive to # 18035701.' "

Judge Byrnes also concluded that Scott's sentences began when he was incarcerated on November 27, 1980.[4]

On January 24, 1997, Scott filed his first petition for post conviction relief, which was dismissed without prejudice. On January 30, 1998, Scott filed a second petition for post conviction relief, arguing, among other things, that Judge Byrnes erred by "revising" Scott's sentence. Scott contended that, under *Robinson v. Lee,* 317 Md. 371, 564 A.2d 395 (1989), the Court of Appeals had held that the language "[consecutive to] sentence now being served" was deficient. On April 19, 1999, Judge Carol Smith denied Scott's petition. In her ruling, Judge Smith distinguished Scott's case from *Robinson.* Specifically, she noted the following:

Petitioner seems to suggest that his various original commitment records used the term "sentence now being served" as the link to each other consecutive sentence in his various cases. This is incorrect. Only in the original commitment record issued in case number 18035701, dated July 7, 1983, is that language used. All of the other

---

**4.** Judge Byrnes listed Scott's sentences as follows:
  No. 18035413 Count 1: Life, from November 27, 1980.
    Count 3: 15 years consecutive to Count 1.
  No. 18035416 Count 1: 20 years consecutive to No. 18035413.
    Count 8: 15 years consecutive to Count 1.
  No. 18107511 Count 1: 30 years consecutive to No. 18035416.
    Count 3: 15 years consecutive to Count 1.
  No. 18035701 Count 1: Life, consecutive to all preceding sentences.

six original commitment records, as well as the four sentence modifications dated May 17, 1990, refer to case numbers and counts to provide clarity for both the Petitioner and the prison authority. Furthermore, any anomaly in Petitioner's sentencing records was the result of Petitioner's resentencing after his twice successful appeals of the imposition of death sentences. In this regard, Petitioner's case is dissimilar to *Robinson,* wherein the sentences were being imposed for convictions of new and different crimes.

Judge Smith then explained that Scott incorrectly had stated the holding in *Robinson:*

> In that case, the Court of Appeals merely stated that the trial judge has an obligation "to articulate the period of confinement with clarity so as to facilitate the prison authority's task." *Robinson v. Lee* at 379, 564 A.2d 395. "Fundamental fairness dictates that the defendant understand clearly what debt he must pay to society for his transgressions." *Id.* at 380, 564 A.2d 395. In *dicta,* the Court encouraged trial judges to "spell out with reasonable specificity the punishment to be imposed commensurate with the defendant's background, conduct, and personality traits." *Id.* The Court did not hold that the use of the phrase "consecutive to sentence now serving" was, in and of itself, deficient.

Finally, Judge Smith concluded that Judge Byrnes did not err when he rewrote Scott's commitment records on May 17, 1990, without benefit of a hearing because the modifications did not "change the substance of Petitioner's sentences" and a hearing on the motion to correct an illegal sentence was indeed held prior to when the corrections were made. She concluded that it was "abundantly clear that . . . Petitioner is to serve two life sentences plus ninety-five years, all to be served consecutively, commencing on November 27, 1980."

On September 4, 2001, Scott filed another motion to correct an illegal sentence and for a reduction of sentence, repeating his previous claims and including, as a new claim, that his

sentence was rendered illegal because of Governor Glendening's new parole guidelines.  On November 19, Judge Albert Matricciani denied Scott's motion.  He first noted that "petitioner's allegations regarding the ambiguity and illegality of his sentences have already been addressed by Judge Carol Smith in her memorandum dated April 16, 1999 [and that] Judge Smith found 'no fatal ambiguity or illegality in Petitioner's sentences.'"  Judge Matricciani then stated that Judge Smith had concluded that Scott's claim that the Court erred by rewriting his commitment records on May 17, 1990, without a hearing as required by Maryland Rule 4–345(c) to be without merit.  Judge Matricciani also concluded that, under *State v. Kanaras,* 357 Md. 170, 742 A.2d 508 (1999), Scott's sentence was not rendered illegal by Governor Glendening's parole policies.

On June 16, 2003, Scott appealed.  *Scott v. State,* 150 Md.App. 468, 822 A.2d 472 (2003).  He presented two questions for the Court of Special Appeals' review:

> 1.   Did the motion court abuse its discretion in failing to make its own determination on the merits regarding whether appellant's sentence was illegal?
>
> 2.   Did the motion court err in accepting the post-conviction court's determination regarding whether Md. Rule 4–345(d) was violated? [5]

*Id.* at 470, 822 A.2d at 473.

With respect to Scott's contention that Judge Matricciani abused his discretion in failing to make his own determination on the merits about the legality of his sentence, the Court of Special Appeals held that, while Rule 4–345(a) created a "limited exception to the general rule of finality," a "court is [not] required to consider anew repeated motions by a litigant setting forth the same facts and contentions."  *Id.* at 473–74, 822 A.2d at 475.  The intermediate appellate court supported

---

**5.**  As we noted *supra,* Scott refers to Maryland Rule 4–345(d) as requiring an open hearing when Judge Byrnes corrected his commitment records in 1990.  In 1990, however, it was Maryland Rule 4–345(c) that provided the open hearing requirement.

its conclusion by determining that the doctrine of law of the case is applicable to a motion to correct an illegal sentence. *Id.* at 474, 822 A.2d at 475. It also determined that Judge Matricciani did not abuse his discretion when he adopted Judge Smith's rationale for denying Scott's motion. *Id.* at 477, 822 A.2d at 477.

With respect to Scott's contention that a hearing was required when his commitment records were corrected in 1990, the Court of Special Appeals explained that Rule 4–345 requires a hearing when a sentence is modified. *Id.* at 479, 822 A.2d at 478. When commitment records are modified, however, the intermediate appellate court concluded that a hearing is not required. *Id.* Because Judge Byrnes did not modify Scott's sentence but rather clarified his commitment records, the Court of Special Appeals thus concluded that there was no error. *Id.*

Scott then filed in this Court a petition for writ of certiorari, which we granted. *Scott v. State,* 376 Md. 543, 831 A.2d 3 (2003).

## II. Discussion

Scott first contends that the Court of Special Appeals erred when it applied the doctrine of law of the case to a motion to correct an illegal sentence. Scott argues that, because Rule 4–345(a) allows a defendant to raise the illegality of a sentence at any time, it is inappropriate to use the doctrine of law of the case to give preclusive effect to earlier orders in a case denying relief. In the same vein, Scott also argues that Judge Matricciani abused his discretion when he adopted Judge Smith's ruling denying Scott's motion to correct an illegal sentence. Finally, Scott argues that, when Judge Byrnes corrected his commitment records, he violated Rule 4–345 by doing so without a hearing. Scott, moreover, maintains that his sentence became illegal due to Judge Byrnes' actions because Judge Byrnes effectively increased his sentence by eighty years when he corrected Scott's commitment records. This is so, Scott argues, because he was serving his fifteen-year handgun sentence (Case No. 18035413) and not the death

sentence, when Judge Silver imposed the additional life sentence in 1983 (Case No. 18035701). Scott reasons that the life sentence imposed by Judge Silver should run consecutive to the fifteen-year handgun sentence and concurrent with his subsequent sentences because Judge Silver stated that Scott's life sentence was "to run consecutive to sentence now serving."

The State argues that the Court of Special Appeals correctly concluded that the doctrine of the law of the case may be applied in connection with a motion to correct an illegal sentence. The State also contends that Judge Matricciani did not abuse his discretion when he adopted Judge Smith's ruling denying Scott's motion to correct an illegal sentence. Finally, the State argues that Judge Byrnes did not impose an illegal sentence when he corrected Scott's commitment records because a hearing was not required and Scott's sentence was not increased by eighty years. The State maintains that a hearing was not required because, when Judge Byrnes corrected Scott's commitment records, he did not modify Scott's sentence. The State also argues that Scott's sentence was not increased by eighty years when the corrections were made because Scott was serving the sentence for murder in Case No. 18035413, not the handgun sentence, when Judge Silver imposed the additional life sentence.

### A. Law of the Case

We agree with Scott that the Court of Special Appeals erred in applying the doctrine of law of the case.[6] We do not agree

---

6. As we explained in *Tu v. State*, "[t]he law of the case doctrine lies somewhere beyond *stare decisis* and short of *res judicata*." 336 Md. 406, 416, 648 A.2d 993, 997 (1994). The law of the case doctrine differs from *res judicata* in that it applies to court decisions made in the same, rather than a subsequent, case. *Id.* We observe that, because motions to correct an illegal sentence occur as "part of the same criminal proceeding and not a wholly independent action," *State v. Kanaras*, 357 Md. 170, 183, 742 A.2d 508, 516 (1999), the doctrine of *res judicata* might apply if such a motion was considered to be a wholly independent action. We note, however, that this is unlikely to occur because, although Maryland Rule 4–345(a) provides that "[t]he court

with Scott, however, that the intermediate appellate court erred because Rule 4–345(a) renders the doctrine of law of the case inapplicable to motions to correct an illegal sentence.[7] Rather, the Court of Special Appeals erred in its conclusion that Judge Matricciani was bound by Judge Smith's denial of Scott's motion to correct an illegal sentence because the two judges were "colleague[s] of coordinate jurisdiction." *Stewart v. State*, 319 Md. 81, 91, 570 A.2d 1229, 1234 (1990). It is for this reason that the doctrine of the law of the case does not apply.

In Maryland, as we explained in *Goldstein & Baron Chartered v. Chesley*, 375 Md. 244, 825 A.2d 985 (2003), generally, the "law of the case doctrine is one of appellate procedure." *Id.* at 253, 825 A.2d at 990 (internal quotations omitted). Under the doctrine, once an appellate court rules upon a question presented on appeal, litigants and lower courts become bound by the ruling, which is considered to be the law of the case.[8] *Turner v. Housing Authority of Balti-*

---

may correct an illegal sentence at any time," we have explained that the rule "creates a limited exception to the general rule of finality [by sanctioning] a method of opening a judgment otherwise final and beyond the reach of the court." *State v. Griffiths*, 338 Md. 485, 496, 659 A.2d 876, 882 (1995). Rule 4–345(a) is a "limited exception" because it applies only to motions that occur as part of the same criminal proceeding. *Kanaras*, 357 Md. at 184, 742 A.2d at 516.

**7.** Md. Rule 4–345(a) provides: "Illegal sentence. The court may correct an illegal sentence at any time."

**8.** Notably, the cases regarding the law of the case doctrine cited by the Court of Special Appeals involve the preclusive effect of prior rulings of *appellate* courts, not trial courts as is the case here, in the same case. *See, e.g., United States v. Mazak*, 789 F.2d 580, 581 (7th Cir.1986)(holding that the law of the case applied where a defendant, after his double jeopardy argument was rejected by the appellate court, advanced the same grounds in a motion to correct an illegal sentence); *Paul v. United States*, 734 F.2d 1064, 1066 (5th Cir.1984)(concluding that the law of the case applied when, after the appellate court remanded the defendant's case for re-sentencing, he appealed and tried to relitigate the same issues); *Brittingham v. State*, 705 A.2d 577, 578 (Del.1998)(noting that relitigation of an issue is precluded when the appellate court previously has decided the issue); *White v. State*, 651 So.2d 726 (Fla.Dist.Ct.App.1995)(holding that, because the defendant's claim had

*more City,* 364 Md. 24, 32, 770 A.2d 671, 676 (2001). Not only are lower courts bound by the law of the case, but "[d]ecisions rendered by a prior appellate panel will generally govern the second appeal" at the same appellate level as well, unless the previous decision is incorrect because it is out of keeping with controlling principles announced by a higher court and following the decision would result in manifest injustice. *Hawes v. Liberty Homes,* 100 Md.App. 222, 231, 640 A.2d 743, 747 (1994); *see also Goldstein,* 375 Md. at 260, 825 A.2d at 994 (adopting the reasoning in *Hawes* ); *Houghton v. County Comm'rs of Kent. Co.,* 305 Md. 407, 414, 504 A.2d 1145, 1149 (1986)(explaining that the law of the case doctrine does not apply to the Court of Appeals because it is required to review judgments of subordinate courts)(citing *Loveday v. State,* 296 Md. 226, 229–34, 462 A.2d 58, 61(1983)). Here, however, there have been no appellate rulings in Scott's case with respect to whether Scott's sentence was illegal; rather, one circuit court judge followed the reasoning of another circuit court judge in the same case. Therefore, the law of the case doctrine is inapplicable.

█ With respect to the decisions of circuit courts, we have held that, "as a general principle, one judge of a trial court ruling on a matter is not bound by the prior ruling in the same case by another judge of the court." *Gertz v. Anne Arundel County,* 339 Md. 261, 273, 661 A.2d 1157, 1163 (1995)(quoting *State v. Frazier,* 298 Md. 422, 449, 470 A.2d 1269, 1283 (1984)); *see also Stewart,* 319 Md. at 91, 570 A.2d at 1234 (stating that "no trial judge is required to abdicate his own individual judgment merely because a colleague of coordinate jurisdiction has made a ruling"). Of course, the second judge may adopt the prior judge's reasoning as his or her own, as long as that judge does not "abdicate his own individual judgment." *Stewart,* 319 Md. at 91, 570 A.2d at 1234. When Judge Matricciani denied Scott's second motion to correct an illegal sentence, he cited Judge Smith, his peer on the Circuit Court, and quoted

---

been decided in a previous appeal, the law of the case doctrine precluded him from raising the claim again).

her earlier denial of Scott's first motion, thereby reflecting his agreement with her reasoning. Having so agreed, Judge Matricciani, as Judge Smith's colleague of coordinate jurisdiction, thus, was free to adopt Judge Smith's reasoning, but he was not bound by the doctrine of the law of the case to do so. *See Gertz,* 339 Md. at 273, 661 A.2d at 1163. The Court of Special Appeals erred by determining otherwise.

As earlier mentioned, Scott also argues that Judge Matricciani abused his discretion by failing to make his own determination when he adopted or agreed with Judge Smith's reasoning. We need not explore this contention further, however, because as explained in Part B below, the determination by both judges that Scott's sentence was not illegal is correct as a matter of law.

### B. Issue of Error

The Court of Special Appeals correctly held that Judge Matricciani did not err when he concluded that Scott's corrected commitment records did not result in an illegal sentence under Rule 4-345. We agree that, by correcting Scott's commitment records, Judge Byrnes did not modify Scott's sentence and render it illegal. We also agree that Judge Byrnes did not violate Rule 4-345(c) when he corrected Scott's commitment records.[9]

Scott contends that his sentence was modified because Judge Byrnes' corrections effectively increased his sentence by eighty years. This occurs, according to Scott, because, when Judge Silver imposed a life sentence in 1983 (Case No. 18035701), he was serving his fifteen-year handgun sentence (Case No. 18035413). Because Judge Silver stated that Scott's life sentence was "to run consecutive to sentence now serving," Scott, relying on *Robinson v. Lee,* 317 Md. 371, 564 A.2d 395 (1989), reasons that the life sentence imposed by

---

**9.** When Scott's commitment records were corrected in 1990, Maryland Rule 4-345(c) provided: "Open Court Hearing. The court may modify, reduce, correct, or vacate a sentence only on the record after notice to the parties and an opportunity to be heard."

Judge Silver should run consecutive to the fifteen-year hand-gun sentence and concurrent with his subsequent sentences.

Because Scott relies so heavily on *Robinson,* however, we first shall review the case in detail. In *Robinson,* the defendant, Lee, was convicted of robbery and sentenced by Judge Cardin of the Circuit Court for Baltimore City to prison for five years. *Id.* at 373, 564 A.2d at 395. Lee then escaped and committed other crimes. After Lee was returned to custody, he was convicted of robbery with a deadly weapon and sentenced by Judge Jones of the Circuit Court for Baltimore City to six years "consecutive with any sentence now serving." *Id.,* 564 A.2d at 396. Meanwhile, six months later, Judge Evans of the Circuit Court for Anne Arundel County sentenced Lee to one year's imprisonment "consecutive to any sentences now being served" for escape. *Id.* Thereafter, Lee escaped again, and again committed robbery with a deadly weapon, for which he was convicted by Judge Perrott of the Circuit Court for Baltimore City and sentenced to fifteen years imprisonment "consecutive with sentence now serving." *Id.* A year later, Lee was convicted for the second escape and sentenced by Judge Biener of the Circuit Court for Anne Arundel County to one year of imprisonment "consecutive to any sentence now being served." *Id.* Finally, three years later, Lee was convicted for possession of marijuana, and Judge Boublitz of the District Court of Maryland, Washington County, sentenced Lee to a six-month sentence "commencing at the expiration of the present term." *Id.* Lee argued that his fifteen-year sentence for robbery was consecutive to his first five-year sentence for robbery and concurrent with the other additional offenses, four of which had been imposed during his original sentence and were to be served consecutive to the sentence he was "now serving." *Id.* at 373–74, 564 A.2d at 396.

In *Robinson,* we agreed with Lee that "now serving" could "refer only to the precise sentence being served at the time the new sentence is imposed." *Id.* at 377, 564 A.2d at 398. We further held that "[t]he trial judge's obligation is to articulate the period of confinement with clarity so as to facilitate the prison authority's task," and we concluded that,

in Lee's case, "this was not done." *Id.* at 379, 564 A.2d at 399. As a result, we determined that the rule of lenity applied, stating:

> Fundamental fairness dictates that the defendant understand clearly what debt he must pay to society for his transgressions. If there is doubt as to the penalty, then the law directs that his punishment must be construed to favor a milder over a harsher one.

*Id.* at 379–80, 564 A.2d at 399. Therefore, in *Robinson,* under the rule of lenity, the result was that Lee's fifteen-year sentence for robbery was consecutive to his first five-year sentence for robbery and concurrent with the other additional sentences that were, in essence, simultaneously imposed.[10]

■ Scott's case differs from *Robinson* in several ways. The first is that Scott was still serving the sentence for murder for Case No. 18035413 when Judge Silver imposed the life sentence in 1983 for a separate murder conviction. Scott, citing *Robinson,* contends that Judge Silver's statement that the life sentence was to "run consecutive to the sentence now serving" refers "only to the precise sentence being served." *Id.* at 377, 564 A.2d at 398. To a point, we do not disagree. The precise sentence being served in this case, however, was the sentence for murder for Case No. 18035413—not the handgun sentence as Scott claims. Although Scott's death sentence was vacated by this Court twice and ultimately modified to a life sentence in 1988, his death sentence had not been modified when he was sentenced to life in 1983 by Judge Silver. When Judge Silver sentenced Scott, he stated that the life sentence was to "run consecutive to the sentence now serving." The sentence Scott then was serving was the sentence for murder in Case No. 18035413.

---

10. In *Robinson,* we excepted the defendant's marijuana conviction from our conclusion that the defendant's subsequent sentences were to run concurrently because the sentencing language "commencing at the expiration of his present term" was "clearly consecutive to the aggregate of all the sentences then imposed." 317 Md. at 379, 564 A.2d at 399.

More importantly, although Scott's death sentence was ultimately changed, the judgment as to his murder conviction was affirmed. *Scott v. State,* 297 Md. 235, 465 A.2d 1126 (1983); *Scott v. State,* 310 Md. 277, 529 A.2d 340 (1987). The fact that Scott's sentence changed from death to life makes no difference as to the order of his "chain" of sentences-his conviction for murder remained. *See Harris v. State,* 303 Md. 685, 692, 496 A.2d 1074, 1077 (1985)(stating that, even though the defendant's previous death sentence had been vacated, the convictions remained and the subsequent sentences imposed on remand were in full force and effect). We, thus, cannot accept Scott's argument that, because his death sentence was eventually changed to a life sentence, the first of his consecutive sentences after the death sentence, the handgun sentence, was the "first" sentence he was actually serving. *See also State v. Jones,* 218 Neb. 713, 358 N.W.2d 765, 767 (1984) (holding that, when two sentences are pronounced at the same time by the same court without a consecutiveness direction, they cannot be served concurrently when death is one of the sentences); *Commonwealth v. Graham,* 541 Pa. 173, 661 A.2d 1367, 1374 (1995)(holding that the death sentence is of such magnitude that the trial court does not have the discretion to order that it be consecutive to any other sentences then being imposed or previously imposed). When Judge Silver imposed the second life sentence in 1983, Scott was serving, undoubtedly, his sentence for first-degree murder.

The second problem with Scott's reliance on *Robinson* is that the facts in *Robinson* are distinguishable from the facts in this case. Unlike Scott, the defendant in *Robinson* received four additional sentences during the same five-year period for which he was serving his first sentence. 317 Md. at 378, 564 A.2d at 398. In addition, each of the four judges imposing the subsequent sentences used language indicating that the sentence imposed was to be served consecutive to the one the defendant was then serving. As we explained in *Robinson,* for both the first escape and second robbery, "the language 'now serving' still related to the initial five year sentence." *Id.* at 378, 564 A.2d at 398. Likewise, when the defendant was

sentenced for his second escape and third robbery, he was serving the same initial five-year sentence. *Id.* The result was that *all of the subsequent convictions,* as they were to be served "consecutive" with any sentence the defendant was "currently serving," began to run after the defendant's initial five-year conviction *at the same time.* In other words, several different judges, using essentially the same language, imposed different sentences on the defendant that nevertheless began to run concurrently because they were all imposed while he was serving his first five-year sentence. Given these facts, we concluded that, under the rule of lenity, the subsequent sentences were consecutive to the first sentence and concurrent with each other. *Id.* at 379–80, 564 A.2d at 399.

In Scott's case, the facts are much different. As Judge Smith correctly concluded, when Judge Silver used the language "consecutive to sentence now serving" when he imposed the life sentence in 1983, this language did not create the kind of ambiguity that arose in *Robinson. See id.* at 379, 564 A.2d at 399 (requiring that the trial judge articulate a period of confinement with sufficient clarity to facilitate the prison authority's task). After Scott was sentenced to death in Case No. 18035413 in 1980, he was convicted and sentenced for a different murder in 1983 while he was still serving his sentence for murder in the earlier case. Unlike the defendant in *Robinson,* however, he did not receive multiple additional sentences while he was still serving his original sentence; he, instead, received one additional life sentence. Consequently, the problem of simultaneously overlapping sentences that had occurred in *Robinson* did not arise in Scott's case. Further, unlike *Robinson,* all of Scott's commitment records for the original murder conviction and related offenses (Case Nos. 18035413, 18035416, 18107511) clearly indicated the order in which they were to be served and referred to both case numbers and counts; as such, the ambiguity that arose in *Robinson* did not arise in this instance.

Finally, when Judge Silver imposed the life sentence in 1983, he said nothing "expressly or by implication" that would indicate that the life sentence was to be served concurrently

with Scott's other sentences; rather, he expressly indicated that the life sentence was a consecutive sentence. *See Maryland Correctional Institution v. Lee*, 362 Md. 502, 523, 766 A.2d 80, 92 (2001)(concluding that the "trial court said nothing that expressly or by implication would indicate that each of the ... sentences was to be served concurrently with the previously imposed sentence"). Therefore, we conclude that the life sentence imposed by Judge Silver in 1983 was a consecutive and not a concurrent sentence. Because Scott's sentence in Case No. 18035413 for murder was later changed to a life sentence, the result is that Scott's total sentence is two life sentences plus ninety-five years.

■ Scott's final argument is that, when Judge Byrnes corrected his commitment records, Judge Byrnes modified his sentence and violated Rule 4–345(c) because he did not hold a hearing when the corrections were made. In 1990, when Judge Byrnes modified Scott's commitment records, Rule 4–345(c) stated:

Open Court Hearing. The court may modify, reduce, correct, or vacate a sentence only on the record after notice to the parties and an opportunity to be heard.

Although Scott argues otherwise, Scott was indeed afforded a hearing in open court on his motion to correct an illegal sentence. In response to Scott's motion, Judge Byrnes held a hearing on May 2, 1990. As his June 6 order reflects, Judge Byrnes corrected his commitment records only after Scott had an opportunity to be heard on his motion. *Cf. Mateen v. Saar*, 376 Md. 385, 398–99, 829 A.2d 1007, 1014–15 (2003) (holding that an order revising a sentence resulted in an illegal sentence because no hearing was held in open court and no notice was given to the defendant). Moreover, as the Court of Special Appeals correctly pointed out, the open hearing requirement found in Rule 4–345 ordinarily applies only when the court intends to "modify, reduce, correct, or vacate a *sentence*." *Scott*, 150 Md.App. at 479, 822 A.2d at 478 (emphasis added). When Judge Byrnes corrected Scott's commitment records, however, Rule 4–345 did not apply; rather,

Rule 4–351(a), regarding commitment records, governed his actions.[11] Rule 4–351(a), unlike Rule 4–345, does not require a hearing in open court.

## III. Conclusion

Although the Court of Special Appeals erred in applying the doctrine of law of the case to a motion to correct an illegal sentence, the Court of Special Appeals correctly determined that a hearing was not required when Scott's commitment records were corrected. Moreover, we conclude that Scott's sentence was not increased by eighty years when Judge Byrnes corrected his commitment records because he was serving his sentence for murder in Case No. 18035413, not the fifteen-year handgun sentence, when he received his second life sentence. It is clear that his sentences, other than his first sentence, the sentence for murder in Case No. 18035413, are to be served consecutively to each other. As such, Scott's total sentence is two life sentences plus ninety-five years.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY APPELLANT.*

---

11. At the time Judge Byrnes corrected Scott's commitment records, Rule 4–351(a) provided:

> (a) Content.—When a person is convicted of an offense and sentenced to imprisonment, the clerk shall deliver to the officer into whose custody the defendant has been placed a commitment record containing:
> (1) The name and date of birth of the defendant;
> (2) The docket reference of the action and the name of the sentencing judge;
> (3) The offense and each count for which the defendant was sentenced;
> (4) The sentence for each count, the date the sentence was imposed, the date from which the sentence runs, and any credit allowed to the defendant by law;
> (5) A statement whether sentences are to run concurrently or consecutively and, if consecutively, when each term is to begin with reference to termination of the preceding term or to any other outstanding or unserved sentence.