640 A.2d 743

Philip C. HAWES, et ux.

v.

LIBERTY HOMES, INC., et al.

No. 696, Sept. Term, 1993.

Court of Special Appeals of Maryland.

May 2, 1994.

Bruce L. Marcus (M. Celeste Bruce and Marcus & Bonsib, on the brief), Greenbelt, for appellants.

Albert D. Brault (Janet S. Zigler and Brault, Graham, Scott & Brault, on the brief), Rockville, for appellees.

Argued before WILNER, C.J., MOYLAN, J., and JAMES S. GETTY, Judge (retired) Specially Assigned.

WILNER, Chief Judge.

## Procedural History

This is appellants' second appeal in this matter. The case arises from a contract entered into in February, 1988, under which appellees agreed to construct a home for appellants on a certain lot of land. The contract was subject to a financing contingency—the ability of appellants to obtain a commitment for conventional financing within 45 days. That period was later extended for an additional 60 days.

There is a dispute as to whether appellants complied with that condition and whether it was eventually waived by appellees. Believing that the condition was neither waived nor satisfied, appellees, in June, 1988, declared the contract null and void. They offered a new contract, which appellants rejected. Appellants then filed suit in the Circuit Court for Montgomery County for specific performance, injunctive and declaratory relief in equity, and damages. In their initial and first amended complaints, they charged appellees with breach of contract and civil conspiracy. They did not request a jury trial; nor did appellees make such a request in their answers to those complaints. In a second amended complaint, appellants added two additional counts—for deceptive trade practices and negligent misrepresentation. In their answer to that complaint, appellees incorporated their earlier answer to the amended complaint, denied the new allegations, and requested a jury trial "on all issues." At some point, appellees filed a separate action against appellants for defamation, which action eventually was consolidated for trial with appellants' action.

Trial was held in both cases in June, 1991. Counts I and III of appellants' action, seeking specific performance and a declaratory judgment in equity, were tried before the court; appellees' claim for defamation and the other five counts in appellants' case—including Count II seeking injunctive relief in equity—were, according to the docket entries, tried before a jury. At the end of appellants' case, the court entered judgment for appellees with respect to Counts II (Injunctive Relief), V (Civil Conspiracy), VI (Deceptive Trade Practices),

and VII (Negligent Misrepresentation). A motion for judgment was denied as to Counts I (Specific Performance), III (Declaratory Judgment), and IV (Breach of Contract). The breach of contract action and appellees' action for defamation were submitted to the jury, which returned a verdict in favor of appellants. On the breach of contract claim, it assessed damages of $200,000. The court reserved ruling on Count I, for specific performance.

It is evident from the closing arguments of counsel that the only issues really before the jury in the breach of contract action, other than damages, were whether appellants had effectively satisfied the financing condition by obtaining an oral commitment from B.F. Saul or, if not, whether appellees were aware that such a commitment had been obtained and, by continuing to deal with appellants thereafter, effectively waived any claim that a written commitment was not forthcoming within the time allowed in the contract.

Within 10 days after entry of the verdicts, appellees filed a motion for judgment NOV and, in the alternative, for new trial. Three principal claims were made in the motion—that judgment NOV was required because the evidence showed as a matter of law that appellees had not waived the financing contingency, that a new trial was required because the damages were excessive in light of the evidence, and that the verdict on the defamation claim was against the weight of the evidence. On July 30, 1991, at the end of a hearing on the motion, the court announced from the bench its conclusions that (1) there was sufficient evidence to sustain a finding by the jury that appellees had waived the financing contingency, and, for that reason, the motion for judgment NOV would be denied, but (2) the damages were excessive, and unless appellants were willing to remit $150,000 and accept a judgment of $50,000, a new trial would be ordered. In its remarks, the court noted the pendency of the specific performance claim and questioned whether it could, in ruling on that count, reach a conclusion contrary to that reached by the jury. Not surprisingly, counsel had different views on that, and no

decision was reached. The court essentially allowed appellants time to consider whether to file a remittitur.

Two weeks later, on August 14, 1991, the court filed an opinion and order denying the claim for specific performance. In the opinion, the court concluded that appellants had failed to satisfy the financing contingency and that such failure "effectively terminated the contract pursuant to its terms." Thus, said the court, as a matter of law, appellants "had no existing contract which could be made the subject of specific performance." There was no mention in the opinion, or the order, about the question of whether appellees had waived the financing contingency, which was the whole point of the motion for judgment NOV, but it is certainly implicit that the court found no such waiver.

Upon the entry of that order, appellants responded to the motion for judgment NOV and new trial, arguing that the damages were not excessive and urging that the court deny that motion. Presumably regarding this response as a rejection of the proposed remittitur, the court, on August 30, 1991, entered an order granting a new trial on the breach of contract claim and denying a new trial on the defamation claim. Although nothing expressly was said in the order about the motion for judgment NOV, by granting the new trial the court implicitly, and necessarily, denied that aspect of the motion. Also missing from the August orders was any ruling on Count III of the Second Amended Complaint, seeking a declaratory judgment in equity. That count seems to have gotten lost, except to the extent that the rights of the parties were declared in the opinion accompanying the order of August 14, 1991.

Aggrieved by the court's decision, appellants appealed, presenting three issues to this Court: whether the trial court erred in granting a new trial, whether it erred " 'in not permitting the [Haweses] to have the jury decide the factual predicate' for the specific performance claim," and whether it erred in asking appellants to remit to $50,000 without a request for such relief from appellees. In an unreported *per*

*curiam* Opinion, a panel of this Court concluded that the issue of the new trial was not properly before the Court, that "in resolving the specific performance claim, the court was not bound by the jury's verdict on the breach of contract claim," and that, although the court should have ruled on the specific performance claim before requiring appellants to accept or reject a remittitur, any error in that regard was harmless in light of their ultimate rejection of the remittitur. *Hawes v. Liberty Homes, Inc.*, 93 Md.App. 829, 832 (1992). Because the panel found no reversible error in the rulings that it regarded as properly before it, the panel affirmed the judgment of the circuit court, fully expecting that the case would then proceed to a retrial as directed by the circuit court.

When the case returned to the circuit court, appellees sprung a neat surprise, in the form of a motion for summary judgment. In that motion, they posited that appellants were not entitled to a new trial because, under principles of election of remedies and collateral estoppel, appellants were bound by the court's ruling, in connection with the specific performance claim, that they had failed to satisfy the financing contingency and that, accordingly, there was no contract to breach. Appellees treated the holding of the appellate panel that the trial court was entitled to make that finding, notwithstanding the contrary conclusion reached by the jury, as support for their argument. As an alternative, appellees urged in addition that, if appellants *were* entitled to a new trial, it would have to be a non-jury trial, as they had waived their right to a jury. The trial court agreed with all three arguments and entered summary judgment in appellees' favor. Hence, this second appeal, in which appellants challenge the granting of summary judgment and the court's alternative conclusion that, if a retrial were to take place, it would be a non-jury one. In a cross-appeal, appellees complain about the denial of their motion for judgment NOV.

We believe that the trial court erred in granting summary judgment. We conclude that appellants are entitled to a new trial on the breach of contract claim and that they are entitled

to a jury trial on that claim. We find no error in the earlier implicit denial of the motion for judgment NOV.

## Discussion

The thrust of appellees' argument in support of their motion for summary judgment was that (1) the principal claim made by appellants was for specific performance, (2) the court, as the panel of this Court confirmed, had the right to draw its own conclusion, in ruling on that claim, whether appellees had breached the contract, (3) by rejecting the remittitur after the court had ruled on the specific performance claim, appellants effectively abandoned the jury verdict, and (4) they had therefore elected the specific performance remedy as opposed to their claim for damages and, accordingly, were bound by the court's findings and were collaterally estopped from relitigating them.

In considering these arguments, we need first to deal with the holding by the earlier panel of this Court. In *Higgins v. Barnes*, 310 Md. 532, 530 A.2d 724 (1987), the Court of Appeals laid out the ground rules for resolving common issues raised in law and equity claims in cases tried after the 1984 merger of law and equity procedure. That case, like this, involved a claim, based on breach of contract, for both specific performance and damages. A counterclaim for damages was also filed, and in that counterclaim, the defendant-counter plaintiff demanded a jury trial. The court, believing that the claim was primarily an equitable one for specific performance, struck the demand for jury trial, tried the case without a jury, concluded that the plaintiff was entitled to specific performance with a credit for certain construction deficiencies, and entered judgment accordingly. The Court of Appeals vacated the judgment, concluding from an analysis of Federal law that the defendant had a right to jury trial on the counterclaim. At 552, 530 A.2d 724, the Court held:

"Higgins' demand for a jury trial should have been granted as to the issues raised by her answer and counterclaim, and those issues should have been tried first. After a jury had determined Higgins' entitlement, if any, to damages result-

ing from deficiencies in construction, the trial judge should have determined whether specific performance was appropriate. The judgment entered by the court would reflect an adjustment *in accordance with the finding of the jury*, thereby giving full effect to Higgins' right to a jury trial." (Footnote omitted; emphasis added.)

In *Edwards v. Gramling Engineering Corp.*, 322 Md. 535, 588 A.2d 793, *cert. denied*, —— U.S. ——, 112 S.Ct. 317, 116 L.Ed.2d 259 (1991), the Court confirmed this view that, where issues presented in an action at law are triable before a jury, those issues must be presented to a jury notwithstanding that they are also raised in an additional or alternative equitable action, and that, in ruling upon the equitable claim, the court is bound by the jury's determination of the common issues. Quoting from *Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir.1988), the Court noted the Federal rule that, where equitable claims are to be resolved by the court and legal claims are to be resolved by the jury, the judge is " 'without power' to reach a conclusion inconsistent with that of the jury."

■ There can be no doubt that this is exactly what the trial court did in ruling on the specific performance claim. From the manner in which the breach of contract claim was presented and argued, the jury necessarily concluded that either the financing contingency had been satisfied or that it was waived by appellees. That was clear to the parties and to the court in their consideration of the post-trial motions. In denying the motion for judgment NOV, the court found that there was sufficient evidence to support the jury's conclusion. In this circumstance, it was simply not permissible under the controlling Maryland law set forth in *Higgins* and *Edwards* for the circuit court to reach a contrary, inconsistent conclusion in ruling on the specific performance claim, and the earlier panel of this Court, unfortunately, erred in finding otherwise.

In affirming the denial of specific performance, the earlier panel concluded that "specific performance is an action which involves the equity jurisdiction of the court, . . . and therefore,

the ability to deny or grant specific performance is clearly within the discretion of the trial court." It held further that, "in resolving the specific performance claim, the [circuit] court was not bound by the jury's verdict on the breach of contract claim." As general propositions of law, those pronouncements are correct. As holdings in the factual context of this case, however, they are not correct. The trial judge could have denied specific performance for reasons relating more particularly to the appropriateness of that remedy; he could have required appellants to choose between specific performance and damages, on the basis that they were inconsistent remedies; but he was not empowered to deny specific performance on the ground that appellees had not breached the contract after the jury concluded that they had.

 Appellees assert nonetheless that, under the "law of the case" doctrine, the trial court and this Court are nonetheless bound by the earlier panel's decision and cannot act inconsistently with it. That doctrine certainly bound the trial court on remand, and ordinarily it would be invoked by us as well. But this Court, like many others, regards the "law of the case" doctrine as one of appellate procedure and convenience rather than as a fixed, immutable doctrine like *res judicata* or collateral estoppel. *See* Annotation, *Erroneous decision as law of the case on subsequent appellate review,* 87 A.L.R.2d 271, 199–317 (1963) and A.L.R.2d Later Case Service. *See also Houghton v. County Comm'rs of Kent Cty.,* 305 Md. 407, 414–16, 504 A.2d 1145 (1986) (McAuliffe, J., dissenting) and cases cited there.

The point of dispute between Judge McAuliffe and the majority in *Houghton* was not the underlying nature of the "law of the case" doctrine but simply whether, in the circumstances of that case, the Court of Appeals should have applied the doctrine and refused to reopen an issue decided earlier by this Court. Judge McAuliffe's pronouncements as to the nature of the doctrine are therefore instructive, notwithstanding that they are contained in a dissenting Opinion. At 415, 504 A.2d 1145, he observed:

"The principle of the law of the case is not an inflexible rule of law. Justice Holmes, writing for the Supreme Court in *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) said:

> In the absence of statute the phrase, law of the case, as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.

It has been described as largely a matter of 'good sense,' *Petition of United States Steel Corporation*, 479 F.2d 489, 494 (6th Cir.1973), *cert. denied*, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973); as a doctrine addressed to the 'good sense' of the court, *Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation of New York*, 426 F.2d 619 (2d Cir.1970), *cert. denied*, 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972), quoting *Higgins v. California Prune & Apricot Grower, Inc.*, 3 F.2d 896, 898 (2d Cir.1924); and, as 'a rule of comity or convenience,' *Walker v. Gerli*, 257 A.D. 249, 12 N.Y.S.2d 942, 944 (1939)."

■ Issues previously decided by a panel of this Court will not be reconsidered in a subsequent appeal simply because the panel in the second appeal has a different opinion or has changed its position. Decisions rendered by a prior appellate panel will generally govern the second appeal, unless (1) the previous decision is patently inconsistent with controlling principles announced by a higher court and is therefore clearly incorrect, *and* (2) following the previous decision would create manifest injustice. *See Maryland Casualty Co. v. City of South Norfolk*, 54 F.2d 1032, *modified on a rehearing on other grounds*, 56 F.2d 822 (4th Cir.1932); *Smith Intern. v. Hughes Tool Co.*, 759 F.2d 1572 (Fed.Cir.), *cert. denied*, 474 U.S. 827, 106 S.Ct. 87, 88 L.Ed.2d 71 (1985); *Eichman v. Fotomat Corp.*, 880 F.2d 149 (9th Cir.1989). To apply the doctrine blindly in such a case would force the Court of Appeals either to grant *certiorari* to review the erroneous conclusion of this Court, even if the issue presented is not of any public importance, or acquiesce in a clear misinterpretation or disregard of

one of its earlier decision. That is not a wise jurisprudential policy. Some flexibility in applying the "law of the case" doctrine appears to us to be a much sounder policy.

This is such a case. Here, the first panel, although stating a correct general rule, rendered an ultimate holding that was clearly inconsistent with *Higgins* and *Edwards,* cases that were controlling. We are not asked here to revisit that decision directly. The issue before us now is not whether the circuit court erred in denying the claim for specific performance on the grounds it stated but goes one step beyond that; it is whether our prior affirmance of that denial serves to prevent appellants from receiving a new trial on their claim for breach of contract damages.

To hold that it does preclude a new trial would be manifestly unjust. When the earlier panel ruled on the circuit court's denial of appellants' claim for specific performance, it necessarily anticipated that there would be a retrial on the damage claim, for that was the then-current posture of the case—a posture the earlier panel declined to disturb. Certainly, neither the trial court, in denying appellants' claim for specific performance, nor the first panel of this Court, in affirming that ruling, anticipated that appellants would be barred in a new trial from pursuing their breach of contract claim. To now extend a prior incorrect holding by this Court to preclude appellants from receiving the new trial expressly granted by the trial court would, in our view, create manifest injustice.

Our decision not to be bound by the "law of the case" doctrine in this second appeal should not be seen as an abandonment of that principle. That doctrine remains a firm aspect of appellate practice. This is simply not a proper case for its application.

■ We also reject appellees' contention that the breach of contract claim is not triable before a jury. This issue was raised in the earlier appeal, and, in response to it, we held that "[a]lthough Liberty's assertion may be correct, the jury trial issue was not raised by Liberty in the proceedings below, and therefore, it is not preserved for appeal." Assuming that the

issue may properly be presented in this appeal, we find no merit to it.

Appellees' view is that, by not demanding a jury trial within 15 days after the answer to the initial complaint or the first amended complaint was filed, appellants waived their right to a jury trial on issues otherwise triable before a jury. The demand it made as part of its answer to the second amended complaint, it avers, went only to the new claim for deceptive trade practices and did not operate to submit to the jury any other count. As the deceptive trade claim is no longer in the case, it urges, there is no right to a jury trial on the breach of contract action. That view is inconsistent with the Rule and with the most authoritative interpretation of it.

Md.Rule 2–325(a) states that a party may elect a trial by jury "of any issue triable of right by a jury" by filing a written demand for such trial either by separate paper or in a pleading. Section (b) of the Rule states that the failure of a party to file the demand within 15 days after service of the last pleading filed by any party "directed to the issue" constitutes a waiver of trial by jury. Section (e) provides that "[w]hen trial by jury has been elected by any party, the action, including all claims whether asserted by way of counterclaim, cross-claim or third-party claim, as to all parties, *and as to all issues triable of right by a jury,* shall be designated upon the docket as a jury trial." (Emphasis added.) Finally, section (f) states that an election for jury trial may be withdrawn only with the consent of all parties not in default.

In commenting on this Rule, Judge Niemeyer and Ms. Schuett, who were members of the Rules Committee that drafted the Rule, point out, in relevant part:

> "If the complaint and answer are filed without a demand for jury trial having been timely made and at a later time the plaintiff amends the complaint to add a new count, either the plaintiff or the defendant may thereafter demand a jury trial, provided it is filed within 15 days of the last pleading directed to that issue. *All issues triable of right*

*by a jury (not just the new count) are then determined by the jury. See section (e).*

. . . . .

Under section (f) of this rule, a demand for jury trial may not be withdrawn by any party without the consent of all parties, even if the withdrawal is sought by the party who initially filed the demand. Once a jury trial is properly elected by any party, it becomes the right of any party thereafter to have the case tried before a jury. All parties may rely on the properly filed demand of any other party, and need not file an additional demand on their own behalf.

A demand properly made by any party on any claim in the action has the effect of submitting to the jury all issues triable of right by a jury. *Section (e) of this rule does not permit submitting some 'legal' claims to the jury and reserving others for trial by the court.* This rule evidences an intent to preserve and favor the jury trial right even if, to preserve it, a technical expansion might occur."

(Emphasis added.) P. Niemeyer and L. Schuett, *Maryland Rules Commentary,* 160–61.

Appellees rely on *State v. Attman/Glazer,* 323 Md. 592, 594 A.2d 138 (1991), to establish a different proposition. That case, we believe, is inapposite. The State there filed a complaint for declaratory and equitable relief, which the defendant answered. Neither party requested a jury trial and so, under Md.Rule 2–325, both sides waived their right to such a trial. Thereafter, the State filed an amended complaint that did nothing more than add a new count for specific performance. In answer to the amended complaint, the defendant sought a jury trial, which the court would not allow. Affirming that ruling, the Court of Appeals observed that, because the sole issue raised by the amended complaint was an equitable claim which could not be tried before a jury, the filing of the amended complaint did not affect the earlier waiver by the defendant.

That is not the situation here. While it is true that none of the parties had sought a jury trial with respect to the initial

and first amended complaints, when the second amended complaint was filed adding a new claim that *was* triable before a jury, appellees demanded a jury trial *on all issues.* Accordingly, all issues triable of right before a jury were subjected to that mode of trial, and, by virtue of § (f) of Rule 2–325, that election may not be withdrawn without appellants' consent, which obviously has not been given.

JUDGMENT REVERSED; CASE REMANDED TO CIRCUIT COURT FOR MONTGOMERY COUNTY FOR TRIAL; APPELLEES TO PAY THE COSTS.