*Baltimore County v. Fraternal Order of Police, Baltimore County Lodge No. 4*
No. 25, September Term 2015


**Civil Procedure - Law of the Case.** Under the law of the case doctrine, a ruling by an appellate court on a particular issue in a case is binding on the lower courts in future proceedings in the same case. While the law of the case doctrine is subject to certain exceptions, its application does not depend on the extent to which the appellate court elaborates the reasons for its ruling. The doctrine applies not only to arguments presented and resolved as part of the prior decision, but also arguments that could have been presented.

**Public Employees - Collective Bargaining - Interest Arbitration and Grievance Arbitration**. The Baltimore County Charter authorizes collective bargaining between the County and its employees. The Baltimore County Code provides for binding interest arbitration to resolve an impasse in bargaining with certain public safety employees in order to set the terms of the collective bargaining agreement with those employees. A particular collective bargaining agreement may provide a grievance process to resolve various disputes that may arise under an agreement, such as disputes about the application or interpretation of the agreement; a grievance process under a collective bargaining agreement may include binding grievance arbitration.

**Public Employees - Collective Bargaining - Arbitration - Budgetary Administration.** Under the Baltimore County Code, when binding interest arbitration is invoked to resolve an impasse in negotiations with public safety employees, the arbitration award sets the terms of the collective bargaining agreement. However, the terms of the agreement for which funding is required are effective and the arbitration award is enforceable only if the County Council appropriates the required funds through the County's budget process. By contrast, when a grievance concerning the interpretation or application of an existing collective bargaining agreement is resolved by a grievance arbitration award, the effectiveness of that award does not necessarily depend on subsequent Council action.

IN THE COURT OF APPEALS
OF MARYLAND

No. 25

September Term, 2015

BALTIMORE COUNTY, MARYLAND

V.

FRATERNAL ORDER OF POLICE,
BALTIMORE COUNTY LODGE NO. 4

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Glenn T., Jr.
 (Retired, Specially Assigned),

JJ.

Opinion by McDonald, J.

Filed: August 25, 2016

*Battaglia, J., now retired, participated in the hearing
and conference of this case while an active member of
this Court; after being recalled pursuant to the
Constitution, Article IV, Section 3A, she also
participated in the decision and adoption of this
opinion.

As authorized under local law, Petitioner Baltimore County engages in collective bargaining with its employees. Respondent Fraternal Order of Police, Baltimore County Lodge No. 4 ("FOP") represents the County's eligible police officers. The County and FOP have entered into numerous collective bargaining agreements over the years. This case arose out of a dispute over the interpretation of a provision in some of those agreements that provided for a fixed subsidy of health insurance costs for officers who retired during certain years.

The dispute proceeded, in accordance with the grievance process in the collective bargaining agreements, to binding arbitration. The FOP won the arbitration, but the County sought to overturn the arbitration award in the courts. Among other things, the County argued that the arbitration award was invalid because it was subject to the County's executive budget process. The Circuit Court for Baltimore County rejected the County's various challenges to the award – a decision ultimately upheld by this Court.

When the case returned to the Circuit Court, the County balked at complying with the arbitration award arguing that the award, even if valid, was unenforceable because it was subject to the County's executive budget process. That argument was indistinguishable from one of the issues that the County had advanced on its prior trip up the appellate ladder and that this Court had rejected on that occasion.

The repetition of the issue from the prior appeal allowed the lower courts to dispose of the issue under the law of the case doctrine. That doctrine expresses the principle, subject to some exceptions, that a court presented with the same issue decided by an appellate court

at an earlier stage of the same case will rule the same way. It may have been with that concept in mind that a noted philosopher in another line of work once said: "it's like *deja vu* all over again."[1]

We hold that the lower courts properly applied the law of the case doctrine here. Even if that doctrine did not control the outcome, the County would fare no better on the merits of its argument.

# I

## Background

The underlying facts and procedural path of this case have been recounted well and at length in two prior reported appellate decisions. *See Fraternal Order of Police Lodge No. 4 v. Baltimore County*, 429 Md. 533, 538-41, 57 A.3d 425 (2012); *Baltimore County v. Fraternal Order of Police Lodge No. 4*, 220 Md. App. 596, 600-50, 104 A.3d 986 (2014). There is no need to reprise them in the same detail here. We reiterate briefly the main points.

## A.     Facts

### Collective Bargaining with County Employees

In accordance with the Baltimore County Charter and the Baltimore County Code ("BCC"), Baltimore County engages in collective bargaining with the exclusive representatives of various categories of its employees.[2] Among those categories of

---

[1]Attributed to Lawrence Peter "Yogi" Berra (1925-2015).

[2]Baltimore County Charter, §801; BCC §4-5-201 *et seq.*

2

employees are police officers below a certain rank, who are represented by the FOP. The negotiations result in an agreement that is called a "memorandum of understanding" or "MOU." Under the County Charter, disputes with the representatives of certain public safety employees may be resolved through binding arbitration. Among the provisions that may appear in an MOU are those pertaining to health insurance benefits, including health insurance benefits for retirees.

*The OPEB Fund*

The County maintains a fund known as the Other Post-Employment Benefits Trust Fund ("OPEB Fund"). The OPEB Fund is the repository of funds appropriated for payment of health and life insurance benefits for County retirees and their beneficiaries. BCC §10-14-103(a). Each year, the County, through its budget process, appropriates an annual contribution to the OPEB Fund. BCC §10-14-104(a). The annual contribution is based on an estimate of future costs, based in part on an actuarial analysis of the County's potential liabilities for such costs. *Id.*

*The MOUs*

Two provisions that appear in the MOUs between the County and the FOP for the fiscal years from 1996 through 2007 are particularly pertinent to this case. Those MOUs provided that the County would furnish the same subsidy of health insurance benefits for officers who retired between February 1, 1992 and June 30, 2007 as for current employees

3

– during that time, a subsidy of 85 per cent of the cost of the premium.[3] In addition, those MOUs also provided that the percentage subsidy at the time of retirement of an officer would remain in effect until the retiree (or the retiree's beneficiary) reached age 65. In later versions of the MOU during that period, the reference to age 65 was changed to eligibility for Medicare.

The MOUs also contained a grievance process for resolving disputes concerning the application or interpretation of an MOU. Among other things, the grievance procedure provided for the filing of a "class grievance" on behalf of similarly situated employees. The grievance procedure also provided for binding grievance arbitration of the parties were unable to resolve a dispute at an earlier stage of the grievance process.[4]

*The Dispute*

After the 2007 fiscal year, the County reduced the health insurance subsidy for current employees.[5] Despite the language in the earlier MOUs that the health insurance subsidy at

---

[3]The fiscal year 1996 MOU retroactively applied this provision to officers who had retired between February 1, 1992 and July 1, 1995.

[4]"Grievance arbitration" generally concerns the interpretation of an existing contract. This is in contrast to "interest arbitration," which generally concerns setting the terms of a new contract after an impasse in negotiations. *See Mayor and City Council of Baltimore v. Baltimore City Firefighters Local 734*, 136 Md. App. 512, 519-20 n.2, 766 A.2d 219 (2001); Black's Law Dictionary (9th ed. 2009) at 119-20.

[5]Beginning July 1, 2007, the County began to reduce the proportion of an employee's health insurance premium paid by the County by one per cent per year until the County was responsible for 80 per cent of the premium and the employee was responsible for 20 per cent of the premium.

the time of retirement would remain in effect for a retiree until the retiree reached age 65 or was eligible for Medicare, the County also reduced the health insurance subsidy for existing retirees who had retired in years covered by those earlier MOUs.[6]

Pursuant to the grievance procedure in the MOUs, in September 2007, the FOP filed a class grievance on behalf of police officers who had retired during the period that the MOUs included the provision that the health insurance subsidy at the time of retirement would remain in effect until age 65 or eligibility for Medicare – *i.e.,* those who retired between February 1, 1992 and June 30, 2007. The County Labor Commissioner denied the grievance on the ground that the provisions of the earlier MOUs were no longer controlling.

*The Arbitration Decision*

The grievance was not resolved at the initial steps of the grievance process. In accordance with that process, the matter proceeded to binding arbitration.[7] The arbitrator

---

[6]The FOP concedes that officers who retired after the expiration of the fiscal year 2007 MOU are not entitled to the same subsidy as earlier retirees.

[7]During the same time period, the FOP also sought to compel the County to engage in further negotiations concerning the health benefits provisions that would be contained in the fiscal year 2008 MOU and filed an unfair labor practice complaint against the County in July 2007. In a separate arbitration, that issue was resolved in favor of the County. The arbitrator in that case concluded that the County had negotiated in good faith with a committee of union representatives that had been designated by the FOP as its bargaining agent on health care issues for that MOU.

The arbitrator who decided that case noted that the contractual grievance concerning the entitlement of existing retirees to a health insurance subsidy under the earlier MOUs – *i.e.,* this case – was not before him. We agree that his decision does not bear on the interpretation of the earlier MOUs that was the subject of the arbitration award in this case.

5

concluded that the dispute was arbitrable and ruled in favor of the FOP on the merits of the grievance. In a decision issued in July 2008, the arbitrator concluded that the "unequivocal language" of the earlier MOUs – that "the health insurance subsidy in place at the time of retirement shall remain in effect until the retiree reaches age 65 [or "becomes eligible for Medicare"]" – was a binding promise that established a vested right for those retirees to whom it applied. He ordered the County to rescind its modification of the retirees' health insurance subsidy, continue the previous subsidy in accordance with the MOUs, and reimburse the retirees for the excessive deductions taken by County in the interim.

**B.** **Procedural History**

*Affirmance of the Arbitration Decision in the Circuit Court*

In August 2008, the County filed an action in the Circuit Court for Baltimore County to vacate the arbitration award, asserting numerous grounds.[8] Among the grounds advanced in that complaint, the County asserted that the award was "contrary to the very clear public

---

[8] Among other things, the County has appeared to argue that its collective bargaining agreements cannot confer a vested right to health care benefits for retirees. In a footnote in its brief to us it cites an Attorney General opinion that discussed the extent to which State legislation could alter a hypothetical contractual right of State retirees to health care benefits without violating the Contract Clause in Article I, §10 of the federal Constitution. 90 *Opinions of the Attorney General* 195 (2005). That opinion concluded that any such legislation would have to satisfy the standards articulated in *Maryland State Teachers Ass'n v. Hughes*, 594 F.Supp. 1353 (D.Md. 1984), *aff'd,* No. 84-2213 (4th Cir. 1985), *cert. denied,* 475 U.S. 1140 (1986).

That opinion is inapposite to this case. The County has not enacted legislation to alter its contractual obligations, much less made a showing that such legislation would satisfy the standards in *Hughes*.

6

policy, as stated in the Baltimore County Charter and Code, that the Baltimore County Council appropriates the funds needed to provide healthcare subsidies for retirees."

The Circuit Court, however, granted summary judgment in favor of the FOP and declined to vacate the arbitration award. The court concluded that the dispute was arbitrable despite the fact that the MOUs had expired prior to the filing of the grievance and that the arbitrator had not committed a "manifest error" or exceeded his authority in deciding that the retirees had a "vested right" to the maintenance of the health care subsidy for the period provided in those MOUs. With respect to the County's argument that the arbitration award "usurped" the budget authority of the County Executive and County Council, the court noted that, in this grievance arbitration, the arbitrator was simply interpreting an existing contract, as opposed to setting the terms of a new contract, which might occur in interest arbitration resulting from an impasse in negotiations.

*Reversal by the Court of Special Appeals Addressing One Issue*

The County appealed that decision, asserting that the Circuit Court had erred in upholding the arbitrator's award for nine reasons – essentially, the same arguments it made before the Circuit Court. In particular, the County again asserted that the arbitration award had "usurped" the budget powers of the County Executive and County Council. The Court of Special Appeals, in an unreported decision, did not address any of the alleged errors, including the County's argument concerning its budget process, but reversed the arbitration award on the ground that the Circuit Court had failed to consider whether the arbitration

7

clause of the fiscal year 2007 MOU – as well as the health insurance benefits – had survived the expiration of that MOU.

*Reversal by the Court of Appeals and Remand to Affirm the Circuit Court*

This Court granted the FOP's petition for a writ of *certiorari*. The County did not file a cross-petition. In its brief in that appeal, the County not only urged affirmance of the decision of the Court of Special Appeals on the issue whether the arbitration clause had expired but also listed the nine issues it had raised in its appeal and touched upon the merits of the arbitrator's decision.

This Court reversed the decision of the Court of Special Appeals. 429 Md. 533, 57 A.3d 425 (2012). The Court held that the question of arbitrability was for the arbitrator to decide in the first instance. The Court observed that the fiscal year 2007 MOU contained a broad arbitration clause that was not necessarily abrogated by expiration of the MOU. 429 Md. at 555-56. The Court also held that the Circuit Court had applied the proper standard of review of the arbitration award, and after reviewing the arbitrator's findings, found no reason to disturb the Circuit Court's award of summary judgment in favor of the FOP on the merits. *Id.* at 557-64. Although the Court stated that the arbitration award was consistent with the MOU and agreed with the Circuit Court that it did not demonstrate a "manifest disregard for the law," the Court did not discuss in any detail the grounds that the County had originally advanced for overturning the arbitration award and that the Circuit Court had

8

rejected. In its mandate, the Court directed the Court of Special Appeals to affirm the decision of the Circuit Court upholding the arbitration award. *Id.* at 565.

The County sought reconsideration of this Court's decision. In its memorandum in support of that motion, the County argued, among other things, that instead of directing the intermediate appellate court to affirm the Circuit Court, this Court should have directed the Court of Special Appeals to address the various issues raised by the County but not discussed in the prior decision of the intermediate appellate court. The County also asserted that the award "will be unenforceable, since there have been no funds appropriated through the executive budget process to afford the relief ...." This Court denied that motion on January 18, 2013.

*County Failure to Comply with Arbitration Decision*

One might think that the matter would be concluded upon return of the file to the Circuit Court. To the contrary, it proved to be the starting point for another round of litigation.

The County refused to comply with the arbitration award. It did not rescind its modification of the retired officers' subsidy and reinstate the subsidy keyed to retirement date. Nor did it refund to those retirees the excess deductions taken for health insurance premiums during the fiscal years from 2008 through 2012.

9

*Motion to Enforce Arbitration Award in Circuit Court*

The FOP promptly filed a motion to enforce the judgment in the Circuit Court. The County opposed that motion. As grounds for its opposition, the County conceded that the arbitrator's award was valid but again asserted that it was unenforceable because the enforcement of the award without an appropriation would "usurp" the authority of the County Executive and the County Council under the County Charter. As a shorthand, we will refer to the County's contention in this regard as the "no-appropriation argument."

At a hearing on the motion and in subsequent filings, the County relied on the no-appropriation argument for its assertion that the arbitrator's award was unenforceable as a matter of public policy. On August 14, 2013, the Circuit Court issued a memorandum and order rejecting the County's argument and granting the FOP's motion to enforce the award. In that memorandum, the court noted that the County had raised the no-appropriation argument during the prior appeal and had spotlighted it in its motion for reconsideration before this Court without success. The Circuit Court concluded that the law of the case doctrine precluded the County from reprising the no-appropriation argument.

The County filed a motion to alter or amend the judgment. In response to that motion, the Circuit Court stayed part of its order, pending a damages hearing to determine the amounts owed to the retired police officers with respect to the excessive deductions taken during fiscal years 2008 through 2013.

10

*Damages Hearing in Circuit Court*

At the damages hearing, the County once again asserted that there was no source of appropriated funds from which it could comply with the Circuit Court's order and reimburse the retirees for the excessive health insurance premiums that the retirees had paid (but that the County actually owed under the earlier MOUs pursuant to the arbitration award). The County resisted providing information concerning the excess premiums paid by the retirees during the period in question and attempted instead to re-argue the merits of the arbitration award.

In April 2014, the Circuit Court ordered the County to make refunds to the retirees in amounts totaling more than $1.6 million, including pre-judgment and post-judgment interest.[9] The County promptly noted an appeal, but apparently did nothing to satisfy the judgment, which had not been stayed.

*Contempt Proceedings and Payment of Judgment from OPEB Fund*

While the County's appeal to the Court of Special Appeals was pending, the FOP initiated contempt proceedings in the Circuit Court for the County's failure to satisfy the judgment. In response, the County at first reiterated the no-appropriation argument and asked the Circuit Court to quash the show cause order. Shortly after the Circuit Court denied

_____

[9]An initial judgment of more than $1.4 million was amended to include pre-judgment interest.

11

that motion, the County filed a certificate of compliance documenting that it had paid the judgment and obviating the need for further contempt proceedings.[10]

In a certificate of compliance that the County filed to document its compliance with the court order, it advised that it paid the judgment with funds from the OPEB Fund allegedly "without the required appropriation." At oral argument in this appeal, the County conceded that the OPEB Fund consisted of funds appropriated for retiree health insurance benefits.

*Appeal of the Circuit Court's Enforcement Decision*

The Court of Special Appeals affirmed the Circuit Court in a comprehensive opinion. 220 Md. App. 596, 104 A.3d 986 (2014). In the course of that opinion, the court noted that the Circuit Court had specifically addressed and rejected the County's no-appropriation argument prior to the first appeal in the case. 220 Md. App. at 617-19. The intermediate appellate court observed that this Court had necessarily considered the no-appropriation argument when we determined in the prior appeal that the Circuit Court had properly granted summary judgment and also when we denied the County's motion for reconsideration of that decision. Accordingly, the intermediate appellate court reasoned, the law of the case doctrine

---

[10]In total, the County certified that it expended a total of $1,696,403.98, including $1,413,120.81 to satisfy the judgment, $213,446.47 to satisfy the pre-judgment interest, $55,348.68 to satisfy the subsidy amounts for April and May 2014, and $14,488.02 in post-judgment interest. As the FOP's counsel acknowledged at oral argument, it is acting as an agent for the retirees who paid more than their share of health benefits costs and has received the funds relating to the health care subsidy as their agent.

12

was fatal to this challenge. *Id.* at 656-62. The Court of Special Appeals also rejected numerous other challenges raised by the County to enforcement of the arbitration award.[11]

The County then filed a petition for a writ of *certiorari*, which we granted. In its petition, the County focused on whether its no-appropriation argument supported a public policy exception to enforcement of the arbitration award.[12]

## II

## Discussion

As this Court recently reiterated, judicial review of an arbitration decision is "very narrowly limited." *Prince George's County Police Civilian Employees Ass'n v. Prince George's County*, 447 Md. 180, 192, 135 A.3d 347 (2016) (interior quotation marks and

---

[11]Citing the law of the case doctrine, the Court of Special Appeals also rejected four other issues raised by the County that had been part of the prior appeal. 220 Md. App. at 650-62. In addition, the court addressed several other issues that arose in the Circuit Court following the remand from the prior appeal and that necessarily had not been decided in the prior appeal. *Id*. at 662-68. In particular, it declined to decide whether the Circuit Court's threat to incarcerate County officials as part of the contempt proceedings was unconstitutional, as the issue had become moot. The court rejected arguments that the FOP lacked standing to seek injunctive relief and damages on behalf of its members, that the County should have been permitted to present testimony to effectively re-litigate the merits of the grievance during the damages hearing, and that the County should not be liable for pre-judgment interest. As noted above, the County raised only the public policy exception in its petition for a writ of *certiorari* and, accordingly, we do not address these other issues.

[12]The County phrased the question for review as follows:

> Whether public policy, as clearly delineated in the Baltimore County Charter, the Baltimore County Code, controlling Maryland case law, and the separation of powers doctrine, provides an exception to the enforcement of the arbitration award in this case?

13

citation omitted). Among the limited grounds for vacating an arbitration award is when the award is contrary to an explicit, dominant, and well-defined public policy. 447 Md. at 194 n.11. The same exception may apply when a party to a collective bargaining agreement fails to comply with an arbitration award and the prevailing party seeks enforcement of that award in the courts. *See Amalgamated Transit Union v. Mass Transit Administration*, 305 Md. 380, 389, 504 A.2d 1132 (1986).

The County argues that the arbitrator's decision should not be enforced because it is contrary to such a public policy. It states that the public policy at issue is the County's executive budget process and the County Charter's requirement that the County government expend only funds that have been appropriated in accordance with that process. The County argues that the arbitrator's decision cannot be enforced because it is at odds with that process, allegedly because funds were not appropriated for this purpose.

The County made this same no-appropriation argument in its prior appeal when it asked the courts to vacate the arbitration award. In the prior appeal, this Court ordered affirmance of the Circuit Court's decision, although we did not explicitly address in detail all of the various arguments advanced by the County. When the County sought reconsideration of our decision and highlighted its no-appropriation argument, the Court declined to change its decision. Unsurprisingly, the Circuit Court and Court of Special Appeals later concluded that the issue has already been decided in this case and is the "law of the case." *See* 220 Md. App. at 650-62.

14

In our view, the lower courts were correct. The law of the case doctrine precludes the County from re-litigating its no-appropriation argument in the context of the enforcement of the arbitration decision as it lost that argument earlier when the courts considered the validity of the arbitration award. Moreover, even if the law of the case doctrine did not dictate the outcome, the result would be the same, as the County's no-appropriation arguments lacks merit in this context.

## A. Whether the County's Argument is Precluded by The Law of the Case

### The Law of the Case Doctrine

The law of the case doctrine is a "rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. United States Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950).[13] Under that doctrine, "once an appellate court rules upon a question presented on appeal, litigants and lower courts become bound by the ruling, which is considered to be the law of the case." *Scott v. State*, 379 Md. 170, 183, 840 A.2d 715 (2004); *see also Garner v. Archers Glen*

---

[13]This Court has applied this principle since at least the mid-nineteenth century when it announced that "[t]he decree of this court (on the former trial of this case) ... on all questions decided by it, was obligatory on the county court, in its proceedings subsequently had, and, in conforming to such decree, no error can be imputed to it, when its proceedings are reviewed on the second appeal to this court." *Mong v. Bell*, 7 Gill 244, 246 (Md. 1848); *accord, Waters v. Waters*, 28 Md. 11, 22 (1867) ("No principle is better established than that a decision of the Court of Appeals once pronounced in any case is binding upon the Court below and upon this Court in the subsequent proceedings in the same case, and cannot be disregarded or called in question."); *Cohill v. Chesapeake & Ohio Canal Co.*, 177 Md. 412, 425, 10 A.2d 316 (1939).

*Partners, Inc.*, 405 Md. 43, 55, 949 A.2d 639 (2008).  It is the country cousin to the more ornately named doctrines of *res judicata*, collateral estoppel and *stare decisis*.[14]

A prior statement of a court that is not part of the court's ruling in the case – *i.e., dicta* – is not law of the case that is necessarily binding on a lower court.  *Garner*, 405 Md. at 57-59.  On the other hand, if an issue is clearly presented to the court and, in rendering a decision, the court necessarily decides that issue, that ruling is law of the case, regardless of the extent to which the court elaborates its reasoning.  Indeed, the doctrine extends to questions that "could have been raised and argued" in the prior appeal, but were not, so long as the ruling resolves them.  *See Fidelity-Baltimore Nat'l Bank & Trust Co. v. John Hancock Mutual Life Ins. Co.,* 217 Md. 367, 372, 142 A.2d 796 (1958).

The law of the case doctrine is not a fixed, immutable doctrine, but more a matter of "appellate procedure and convenience."  *Hawes v. Liberty Homes, Inc.*, 100 Md. App. 222, 230, 640 A.2d 743 (1994) (Wilner, J.).  In the words of Justice Holmes, it "expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power."  100 Md. App. at 231 (quoting *Messenger v. Anderson,* 225 U.S. 436, 444 (1912)).  The purpose of this doctrine is to avoid piecemeal litigation – that is, to prevent litigants from

---

[14] *See* Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation*, 135 U. Penn. L. Rev. 595, 597-612 (1987).  Whether one or the other doctrine pertains in particular circumstances depends on whether the issue arises in the same case or successive suits involving the same parties, whether there is already a final judgment or simply a ruling in an ongoing case, and whether the issue relates to the application of a legal principle to particular facts or relates to a general question of law.  *Id.* at 597-99 & nn. 8-10; *see also Tu v. State*, 336 Md. 406, 416, 648 A.2d 993 (1994).

prosecuting successive appeals in a case that raises the same questions that were decided in a prior appeal. *Fidelity-Baltimore Nat'l Bank & Trust Co.,* 217 Md. at 371-72.

Courts have identified three sets of circumstances in which the law of the case doctrine is not applied: (1) the evidence in a subsequent trial is substantially different from what was before the court in the initial appeal; (2) a controlling authority has made a contrary decision in the interim on the law applicable to the particular issue; or (3) the original decision was clearly erroneous and adherence to it would work a manifest injustice. *Garner*, 405 Md. at 56; *Turner v. Housing Authority of Baltimore City*, 364 Md. 24, 34, 770 A.2d 671 (2001).[15]

Whether the law of the case doctrine should be applied in particular circumstances is a legal question; accordingly, we review a lower court's invocation of that doctrine without any special deference. *See Scott*, 379 Md. at 184-85 (reviewing whether the "law of the case" doctrine applied to judges on the same trial court under a *de novo* standard); *Goldstein & Baron Chartered v. Chesley*, 375 Md. 244, 260-61, 825 A.2d 985 (2003) (same).

_____

[15]As courts have sometimes noted, the law of the case doctrine does not apply to the Court of Appeals to the same extent as the lower courts. *See Turner v. Housing Authority of Baltimore City*, 364 Md. 24, 35 n.5, 770 A.2d 671 (2001) (citing cases). In part, this is because an appellate court is ordinarily not bound by a ruling by a lower court in a case under appellate review. In addition, consistent with the second exception to the doctrine, the doctrine defers to a contrary decision on the law by a controlling authority. With respect to most issues of State law, the Court of Appeals is the "controlling authority" and thus can trigger that exception itself.

17

*The Law of __this__ Case*

The County argues that the law of the case doctrine does not apply primarily because our earlier decision addressed the *validity* of the arbitration award, as opposed to its *enforceability*. We disagree. As the Court of Special Appeals observed, our prior decision was a "final determination that FOP was entitled, as a matter of law, to the judgment to enforce the arbitration award. That decision necessarily embraced and resolved all of the issues that the County raised, as well as any other issues that were then available to raise, challenging the validity of the arbitration award." 220 Md. App. at 653.

The County had argued from the outset of the proceedings in the Circuit Court that the arbitration award was defective and unenforceable for public policy reasons because it somehow interfered with the County's executive budget process. *See* 220 Md. App. at 650-62. The Circuit Court rejected that argument as part of its award of summary judgment in favor of the FOP, and the County raised the no-appropriation argument again on appeal. In issuing a mandate that directed the Court of Special Appeals to affirm the Circuit Court, this Court implicitly rejected that argument on its merits. When the County sought reconsideration of that decision, explicitly on the ground that it would be unenforceable on the basis of its no-appropriation argument, this Court denied that request. The County then attempted to raise the same argument to avoid enforcement of the arbitration award. In rejecting the same argument, the lower courts properly applied the law of the case doctrine.

18

*Whether An Exception to the Law of the Case Doctrine Applies Here*

The County argues we should revisit the no-appropriation argument because exceptions to the law of the case doctrine preclude its application here. First, the County argues that evidence presented at the damages hearing on remand was "substantially different" than at the earlier hearings concerning summary judgment. It is true that the evidence was different at the damages hearing because the subject of that hearing was damages rather than liability, although the County also attempted to elicit testimony concerning the merits of the arbitration award at the hearing. The Circuit Court sustained objections to such testimony, but it permitted the County to make detailed proffers as to the anticipated testimony on that subject. The proffered testimony was not substantially different than what the County had argued in the earlier proceedings. There was nothing new in terms of the County's no-appropriation argument.

With respect to the second exception to the law of the case doctrine, the County asserts that it is inapplicable as a result of an intervening decision of the United States Supreme Court, *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015). In the County's view, the *Tackett* decision casts doubt on this Court's earlier decision in this case.

In *Tackett*, the Supreme Court held that a collective bargaining agreement that was silent on the issue of whether it vested certain retirees with lifetime contribution-free health care benefits should be interpreted under ordinary contract principles. *Tackett*, 135 S. Ct. at 937. Although the Supreme Court stated that a court should not infer from contractual

19

silence an intent to vest benefits for life, the Court did not itself construe the agreement but remanded the case for the lower court to do so. A concurring opinion joined by four members of the Court explicitly noted the possibility that the lower court, upon an examination of the entire contract in light of appropriate contract principles, would find that the parties intended such vesting. 135 S. Ct. at 937-38.

As is evident, the *Tackett* decision does not relate to the County's no-appropriation argument or to the public policy exception for enforcement of an arbitration award . Rather, the County apparently believes that it undermines the merits of the arbitration award interpreting the MOUs in this case. Even considered from that perspective, however, *Tackett* is distinguishable. In the case before us, we do not have silence as to the duration of the retiree subsidy (as in the contract in *Tackett*), but rather specific language in the MOUs that a retired officer is to receive the subsidy in effect at retirement until age 65 or the retired officer becomes eligible for Medicare. As the arbitrator concluded, "the unequivocal language of the MOUs ... is subject to no interpretation other than ... a binding promise to retirees that the subsidy would remain at whatever level existed at their retirement*." Tackett* thus does not compel a different result from our prior decision in this case.

Finally, we reject the notion that our earlier decision was "clearly erroneous" or would work a "manifest injustice." Accordingly, none of the three exceptions to the law of the case doctrine apply.

*Summary*

The Circuit Court and intermediate appellate court were clearly correct when they looked to the law of the case doctrine, in part, to resolve the County's arguments against enforcement of the arbitration award. And we could do so as well. Nonetheless, as the County notes, we are not bound by that doctrine in the same way as the Circuit Court and the Court of Special Appeals. It is also true that we did not elaborate on this issue in our prior decision. Whether a court's judgment encroaches on the powers of the other branches of government is a significant legal question that can be of constitutional dimension in some cases – although not this one. Accordingly, we shall explain some of the reasons why we find the County's no-appropriation argument inappropriate.

**B.**      ***Whether the Arbitration Award is Unenforceable as Contrary to Public Policy***

As it has from the outset of this case, the County argues that the arbitration award is contrary to public policy, as embodied in the County's executive budget process.[16]  The

---

[16]The County also argues that enforcement of the arbitration award would be contrary to the public policy embodied in the constitutional separation of powers. *See* Maryland Declaration of Rights, Article 8. However, on closer inspection, it appears that this argument is not addressed to the validity of the arbitration award or its enforceability, but rather to the measures taken by the Circuit Court to enforce its own judgment – *i.e.,* the show cause order initiating contempt proceedings that potentially threatened incarceration of County officials for non-compliance with the court order.

To the extent that the County is complaining about the Circuit Court's exercise of its contempt powers, that was not the question on which the County sought – and we granted – a writ of *certiorari*. Thus, under Maryland Rule 8-131(b), we ordinarily would not consider that issue. In any event, as the Court of Special Appeals held, the propriety of the show cause order is moot as no one was held in contempt and the County has complied with the court's order. 220 Md. App. at 662.

21

County is correct that the executive budget process set forth in the County Charter and County Code is an important public policy. In some circumstances, it might well provide a basis for declining to enforce an arbitration award. Such is not the case here, however.

*The County's Executive Budget Process*

The Baltimore County Charter provides for an executive budget process under which the County Executive annually submits to the County Council a budget consisting of the current expense budget, the capital budget and capital program, and budget message. Baltimore County Charter, §§701-706; *see also* BCC §10-1-113. Following a public hearing, the County Council may, with some exceptions, delete or decrease items in the proposed budget, but may not add or increase items. Charter, §709. The County Council is to adopt the budget in the form of an Annual Budget and Appropriation Ordinance. *Id.* The County Council may also make supplementary appropriations during the course of the fiscal year, as recommended by the County Executive. *Id.,* §712. County agencies and officials may not expend money for any purpose "in excess of the amounts appropriated or allotted for the same general classification of expenditure in the budget ... or in any supplemental appropriation." *Id*., §715. This restriction does not preclude them from entering into contracts for services beyond the fiscal year in which the contracts are made "provided that the nature of such transactions reasonably requires the making of such contracts." *Id.*

Collective bargaining agreements with County employees are funded through this budget process. *See Fraternal Order of Police, Lodge No. 4 v. Baltimore County*, 340 Md.

157, 164-66, 665 A.2d 1029 (1995). As noted earlier, retiree health benefits, whether determined through collective bargaining or otherwise, are funded through appropriations to the OPEB Fund. The interplay of the budget process with an arbitration award related to a collective bargaining agreement depends to some extent on whether the arbitration award sets the terms of the collective bargaining agreement or simply interprets them – *i.e.*, whether it precedes or follows the County Council's action. *See id.*

*Grievance Arbitration v. Interest Arbitration*

To a certain extent, the County's no-appropriation argument appears to confuse an arbitration award resulting from a grievance arbitration – such as the award in this case – with an arbitration award arising from interest arbitration – such as may occur during collective bargaining negotiations prior to the budget process. *See Mayor & City Council of Baltimore v. Baltimore City Firefighters Local 734*, 136 Md. App. 512, 519 n.2, 766 A.2d 219 (2001).

A form of interest arbitration is provided in the County Code to resolve impasses in collective bargaining negotiations. Under BCC §4-5-505, when collective bargaining negotiations with public safety officers reach an impasse, the matter may be referred to an arbitrator. The arbitrator's award becomes the MOU between the County and the union – an MOU that is subject to the County's budget process.[17] In those circumstances, the County

---

[17]The binding arbitration impasse procedures are available only for negotiations with certain public safety employees; health care issues are specifically excluded from binding arbitration. BCC §4-502(d)(2).

Executive is obligated under the County Code to submit the MOU required by the arbitrator's award to the County Council along with legislation to accomplish any appropriations required by the award. There is no requirement, however, that the County Council enact such legislation or make the necessary appropriations. *See* BCC §4-5-505(h)-(i). Under this regime, the County Council may lawfully decline to fund benefits provided in an MOU where the terms of the MOU have been set by an arbitration award. *See Fraternal Order of Police, Montgomery County Lodge No. 35 v. Montgomery County*, 437 Md. 618, 622-25, 89 A.3d 1093 (2014) (describing Montgomery County Council's rejection of a provision in collective bargaining agreement that resulted from arbitration award following impasse in negotiations).

If the Council declined to appropriate funds to support such an arbitration award and a court were to order the County to expend funds to carry out such an arbitration award, the County's no-appropriation argument would have some force. But we are not dealing with such an arbitration award in this case.[18]

By contrast, the arbitration award in this case resulted from a grievance arbitration pursuant to the terms of MOUs that had been agreed to and accepted by the County Executive and County Council. The purpose of that arbitration was not to set the terms of an MOU, but to interpret a term of the already agreed-to MOU.

---

[18]The record makes reference to an interest arbitration award made as a result of an impasse in negotiations between the County and FOP on non-health care issues for fiscal year 2008. That award was apparently funded by an appropriation by the County Council.

As recounted above, the County has entered into a series of collective bargaining agreements with the FOP. There is no dispute that each of those agreements was approved and accepted by the County Executive and County Council. In addition, as the County Code provides and as the County acknowledged at oral argument, funds are annually appropriated to the OPEB Fund to pay the promised future retiree health benefits. The County took the position that certain retirees were not entitled to what it had promised in those MOUs with respect to the health insurance subsidy. The County's position on that particular issue was determined to be incorrect through the decisionmaking process that it had agreed to abide by in the MOUs – binding arbitration. This Court upheld that decision. The interpretation of those MOUs has already been decided. It is evident that the County disagrees with the arbitrator's decision and with the prior decision of this Court in this case. This appeal is not an occasion to re-litigate that decision. Nor is it an occasion for the County to reset the terms of MOUs it previously agreed to.

An arbitration award resulting from a grievance arbitration can be found to be invalid or unenforceable as contrary to an overriding public policy. *See, e.g. Prince George's County v. Prince George's County Police Civilian Employees Ass'n*, 219 Md. App. 108, 98 A.3d 1094 (2014), *aff'd in part and rev'd in part on other grounds*, 447 Md. 180, 135 A.3d 347 (2016). It is also conceivable that the overriding public policy could involve a local government's budget process when there is no source of appropriated funds from which the

25

local government may make a promised payment. However, in this case, there was such a source.

*The OPEB Fund*

At the damages hearing in the Circuit Court, the County proffered that its witnesses would testify that funds had not been appropriated to pay the health insurance subsidy for the retired officers promised in the MOUs, although the County did not offer any specific documentation that there was no source of appropriated funds to carry out that promise. As indicated earlier, health care benefits for retirees are paid from the County's OPEB Fund, which consists of funds appropriated by the County government through its budget process. Indeed, the County paid the judgment in this case – the reimbursement of unpaid health care costs that were owed under the MOUs – from the OPEB Fund.

The County's argument appears to be that, because the County administration takes the position that its (mistaken) interpretation of the MOUs would have it pay a lower percentage of the health care costs of these retirees, the funds that the County government actually appropriated to pay for retiree health benefit costs should not cover part of those costs. Such an argument could convert any dispute concerning contract or statutory interpretation with the County into an alleged violation of the executive budget process. For example, reduced to its essence, any dispute over whether a particular retiree is eligible for

26

benefits under an MOU would turn into a question as to whether the County had theoretically appropriated funds for the benefits for that particular employee or retiree.[19]

Under the County Code, the County makes an annual appropriation to the OPEB Fund based on an estimate of what will be needed in the future to pay for retiree benefits. As with any estimate, the amounts appropriated to the Fund may prove higher or lower than what is ultimately needed, as a result of a variety of factors, including errors in how the estimate is calculated. It may be that one or more annual appropriations to the OPEB Fund were affected by the County's erroneous construction of the MOUs and that the County may have failed to appropriate sufficient funds to cover all of the benefits that are to be paid out of that Fund in the future. Whether the fact that the County has belatedly paid these retirees what it had promised in health care benefits means that there will be less funds for future payments to other beneficiaries obviously depends on many different factors. If the County Council should fail to appropriate money to the OPEB Fund needed to pay the obligations for which the Fund was created, including an arbitration award related to health care benefits, a court may someday have to weigh competing public policies. But that is not this case. We have not reached that bridge.

---

[19]The County's no-appropriation argument appears to be premised on the notion that the appropriation for retiree health benefits is keyed to specific amounts for specific retirees. However, the County does not necessarily know in advance precisely how the various factors affecting its liability will play out – *e.g.*, who will retire unexpectedly, who will unexpectedly not retire, who will die without surviving beneficiaries, etc.

27

*Summary*

An arbitration award may be vacated or declared unenforceable by a court if the award is in conflict with an explicit, dominant, and well-defined public policy. In a similar fashion, under the Baltimore County Charter and Baltimore County Code, an interest arbitration award that sets the terms of a collective bargaining agreement is subject to the County's executive budget process.

An arbitration award that arises from a grievance process under an MOU previously approved by the County Executive and County Council and that interprets the provisions of the MOU is not subject to the executive budget process in the same way as an interest arbitration award that resolves an impasse in negotiations. While in some circumstances such an award may be unenforceable under the public policy exception, here the award is enforceable, particularly when there is a source of funds appropriated for the category of benefits that are the subject of the award.

## III

### Conclusion

For the reasons set forth above, we hold:

1.     The County has advanced its no-appropriation argument as a basis for its failure to comply with the arbitration award. It previously made the same argument as part of its effort to have the arbitration award vacated by the courts. The no-appropriation argument was explicitly rejected by the Circuit Court as part of its decision to award

28

summary judgment against the County – a decision affirmed by this Court in the prior appeal in this case. Under the law of the case doctrine, the lower courts properly declined to revisit that issue as none of the exceptions to the law of the case doctrine pertain in this case.

2. Even if the law of the case doctrine did not apply, the County's no-appropriation argument appears to be premised on a fundamental confusion between interest arbitration and grievance arbitration. In any event, the County ultimately refunded the excessive health insurance deductions – premiums that were actually the County's obligation under the MOU – from funds appropriated by the County Council for the payment of health insurance benefits.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**